UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x
MIDAS FUND, INC.,  
        Plaintiff,  

  -against-  

GAMMON GOLD, INC., FRED GEORGE, BRADLEY LANGILLE, RUSSELL BARWICK, COLIN SUTHERLAND, BMO NESBITT BURNS INC., SCOTIA CAPITAL INC., and TD SECURITIES INC.,  

        Defendants.  
------------------------------------------------- x

Index No. 07 CV 6707 (NRB)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS BMO NESBITT BURNS INC., SCOTIA CAPITAL INC. AND TD SECURITIES INC. TO DISMISS THE SECOND AMENDED COMPLAINT**

Of Counsel:
Daniel R. Murdock
Philip M. Smith
Kate Woodall (not yet admitted)

FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, NY 10103
(212) 318-3000

*Attorneys for Defendants BMO Nesbitt Burns Inc., Scotia Capital Inc., and TD Securities Inc.*

December 21, 2007

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

    A.    Prior Proceedings ..................................................................................... 2

    B.    Summary of Complaint III........................................................................ 3

ARGUMENT
AS MIDAS FAILS TO ADEQUATELY ALLEGE ANY
WRONGDOING ON THE PART OF THE UNDERWRITERS,
THE SECOND, THIRD AND SIXTH CAUSES OF ACTION
AGAINST THEM SHOULD BE DISMISSED WITH PREJUDICE............................................ 7

    A.    Midas Fails To State A Fraud Claim Against The Underwriters........................... 8

    B.    Midas' Fails To State Claims Against The Underwriters Under Sections
           11 and 12(a)(2)....................................................................................... 10

CONCLUSION................................................................................................................... 12

## TABLE OF AUTHORITIES

Page

**Cases**

*Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.*,
 No. 03 Civ. 0377 (NRB), 2003 WL 21767739 (S.D.N.Y. July 30, 2003) .............................. 10

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
 511 U.S. 164 (1994) ............................................................................................................. 8

*Druyan v. Jagger*,
 508 F. Supp. 2d 228 (S.D.N.Y. 2007) ................................................................................. 9

*Filler v. Hanvit Bank,*
 339 F. Supp. 2d 553 (S.D.N.Y. 2004) ................................................................................. 9

*In re WorldCom, Inc. Secs. Litig.,*
 382 F. Supp. 2d 549 (S.D.N.Y. 2005) ................................................................................. 9

*Mills v. Polar Molecular Corp.*,
 12 F.3d 1170 (2d Cir. 1993) ................................................................................................ 9

*Natowitz v. Mehlman*,
 542 F. Supp. 674 (S.D.N.Y. 1982) ...................................................................................... 9

*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004) .................................................................................... 9, 10, 11

*Wight v. Bankamerica Corp.,*
 219 F.3d 79 (2d Cir. 2000) .................................................................................................. 8

*Williams v. Bank Leumi Trust Co.,*
 No. 96 Civ. 6695 (LMM), 1997 WL 289865 (S.D.N.Y. May 30, 1997) ............................ 9

**Statutes**

15 *U.S.C.* § 77k ................................................................................................................. 3, 10, 11

15 *U.S.C.* § 77l(a)(2) ......................................................................................................... 3, 10, 11

15 U.S.C. § 77z-2(a) .................................................................................................................. 11

15 U.S.C. § 77z-2(c) .................................................................................................................. 11

Private Securities Litigation Reform Act of 1995 ................................................................. 1, 2

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. 1

Federal Rule of Civil Procedure 9(b) ............................................................................... passim

Defendants BMO Nesbitt Burns Inc. ("BMO"), Scotia Capital Inc. ("Scotia"), and TD Securities Inc. ("TD") (collectively, the "Underwriters") respectfully submit this memorandum of law in support of their motion pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA") to dismiss, with prejudice, the Second Amended Complaint ("Complaint III" or "Compl. III") as to them.

## PRELIMINARY STATEMENT

This action arises from the purchase by Plaintiff Midas Fund, Inc. ("Midas") of $8 million worth of securities issued by Defendant Gammon Gold, Inc. ("Gammon") in a $200 million public offering in April 2007 pursuant to a registration statement and prospectus (the "Gammon Registration Statement"). Gammon and its individual officers and directors named in Complaint III (sometimes referred to collectively as "Gammon") are jointly represented, and the Underwriters are separately represented by the undersigned counsel. The Underwriters, three Canadian investment banking firms headquartered in Toronto, Ontario, have been named in only three of the eight claims in Complaint III: the Second, Third and Sixth Causes of Action. As all defendants are sued on these causes of action, the Underwriters to avoid repetition of the same arguments and authorities on their motion to dismiss, hereby join in and adopt as part of their dismissal motion the arguments and authorities addressed to these three causes of action in the *Memorandum in Support of Gammon Gold Inc.'s and the Individual Defendants' Motion to Dismiss the Second Amended Complaint* ("Gammon Mem.").

Midas alleges that it was defrauded by a series of statements by Gammon, all substantially similar in content, that it projected an annual production of 400,000 "gold equivalent ounces" in 2007. As Gammon establishes in its memorandum (and incorporated by reference herein), Midas' sole complaint about the public offering is that Gammon allegedly overstated its estimated or projected annual production for 2007 in a series of press releases and

other statements that preceded or were contemporaneous with the stock offering.[1]  However, the subject statements are clearly classic forward-looking statements and Midas fails to allege a single fact which would support an inference that Gammon, much less the Underwriters, did not have a good faith basis for believing the projections when Gammon made them.  Moreover, the very risks that Midas alleges caused the production levels to allegedly fall short of anticipated levels in the first quarter of 2007 were clearly identified in the Gammon Registration Statement.  Because the subject statements are not material misrepresentations as a matter of law and are barred by the PSLRA's safe harbor for forward-looking statements and the "bespeaks caution" doctrine, Midas' claims against the Underwriters should be dismissed.

**A.     Prior Proceedings**

Midas filed Complaint III on October 12, 2007.  It renamed the single defendant in its earlier pleadings, Gammon, and added as defendants the Underwriters and the individual Gammon officers and directors.[2]  At the outset of all three of its Complaints, it alleged that "[t]his action arises out of fraud . . . in connection with the April 2007 sale of shares in Gammon."  (Compl. III ¶ 1.)

On September 27, 2007, "after having conducted further research and analysis," counsel for Midas sought permission from the Court to amend its then pending Amended Complaint yet again "to add additional defendants, namely certain officers and directors of Gammon, as well as three firms which acted as underwriters for the [Gammon] offering . . . ."  By letter to counsel for

---

[1]     Midas alleges that it based its reliance upon Gammon's "repeated public misrepresentations regarding the production and estimated production of Gammon's precious metal mines in Mexico," which were "carried out by Defendants Barwick and George, and ratified by Defendants Langille, Sutherland, and the Underwriter Defendants . . . ." (Compl. III ¶¶ 1, 48.)

[2]     Although the Underwriters were not named as defendants in the first two complaints, Midas alleged that, "as underwriters, Scotia Capital and TD Securities, as well as BMO, knew or should have known that Gammon's representations about its scheduled production were false."  (Complaint ¶ 33; Amended Complaint ¶ 32.)

Midas and Gammon dated October 1, 2007, the Court ruled that it would "permit the plaintiff to amend its complaint one last time," and Midas exercised this right by filing Complaint III on October 12, 2007.

### B.   Summary of Complaint III

As it had in the first paragraph of the two prior complaints, Midas summarized the gravamen of Complaint III in its very first paragraph:

> "This action arises out of fraud carried out by Defendant Gammon, the Individual Defendants and Underwriter Defendants in connection with the April 2007 sale of shares in Gammon . . . . "

(Compl. III ¶ 1.)  And, as in the two prior complaints, Complaint III sets forth a series of *FACTUAL ALLEGATIONS*, in paragraphs 29 through 72, which are thereafter incorporated by reference in each of the subsequently asserted causes of action, now expanded to eight separate claims.  Each cause of action also incorporates the allegations of every claim that precedes it. Complaint III contains eight causes of action, and the Underwriter Defendants are named only in the Second, Third and Sixth.

The Second Cause of Action (Compl. III ¶¶ 82-89) alleges a violation of Section 11 of the Securities Act of 1933 ("the 33 Act"), 15 U.S.C. § 77k (1998), against all defendants, based upon allegedly material false representations in the Gammon Registration Statement for Gammon's April 2007 stock offering filed with the Securities and Exchange Commission ("SEC").  The Third Cause of Action (Compl. III ¶¶ 90-100) alleges a violation of Section 12(a)(2) of the 33 Act, 15 U.S.C. § 77l(a)(2) (2000), as against all defendants, based upon the same allegedly false representations in or incorporated in the Gammon Registration Statement.

In the Sixth Cause of Action in Complaint III (¶¶ 115-122), Midas expands its prior common law fraud claim against Gammon only to accuse all defendants, including the Underwriters, with complicity.  The core allegation of Complaint III underlying the fraud

charges against the Underwriter Defendants with respect to the April 2007 underwriting is as follows:

> [T]he Underwriting Defendants took substantial steps to aid and abet Gammon's fraud upon Midas, including but not limited to, by executing the Registration Statement and/or failing to ensure that the Registration Statement was free from material misstatements and omissions.

(Compl. III ¶ 120.)  However, the Complaint does not allege that the Gammon Registration Statement itself contained any representation, true or false, concerning Gammon's estimated or projected future gold and silver production.  Rather, the Registration Statement simply "incorporates by reference" a number of documents generated by Gammon, including a series of prior press releases which contain references to Gammon's estimated future production for 2007.[3]  On the other hand, the Registration Statement, contains a **"SPECIAL NOTICE REGARDING FORWARD-LOOKING STATEMENTS AND OTHER INFORMATION,"** in which it provides a detailed description of what constitutes forward-looking statements and why "investors are cautioned that forward-looking statements are not guarantees of future performance and, accordingly, investors are cautioned not to put undue reliance on forward-looking statements due to the inherent uncertainty therein."  The notice, among other things, points out that "the words 'believe', 'expect', 'anticipate', 'contemplate', 'target', 'plan', 'intends', 'contains', 'budget', 'estimate', 'may', 'will', 'schedule', and similar expressions identify forward-looking statements."

---

[3]     In its FACTUAL ALLEGATIONS, Midas identifies twelve separate statements by Gammon from "early 2007" through April 24, 2007, all but one or two of which were in writing, which Gammon asserts were material misrepresentations regarding the production and estimated production of gold equivalent ounces at Gammon's Ocampo and El Cubo mines in Mexico. (Compl. III ¶¶ 32-40, 50 and 55.)  However, only the press releases referred to in paragraphs 33, 34, 35, 39 and 40 were incorporated by reference in the Registration Statement.

In addition, the Registration Statement under "Risk Factors," contains a very detailed cautionary statement as to the inherent risks and uncertainties of any forward looking estimates of future production at a precious metals mining operation:

> ***The Company has a limited history of producing precious metals from its properties and there can be no assurance that it will successfully expand or establish mining operations or profitably produce precious metals.*** The Company has no history of profitability. Although commercial bodies of ore have been identified on the Ocampo Project and the El Cubo Project and production from such deposits has commenced, there is no assurance that they can be mined profitably. Accordingly, it is not assured that the Company will realize any profits in the short to medium term. Any profitability in the future from the business of the Company will be dependent upon developing and commercially mining economic deposits of minerals.
>
> The Company has incurred losses and may continue to incur losses for the foreseeable future. The Company incurred the following losses during each of the following periods: $28,692,380 for the year ended December 31, 2006, $11,607510 for the five month period ended December 31, 2005 and $19,375,595 for the year ended July 31, 2005.
>
> * * *
>
> ***The figures for the Company's future production are estimates based on interpretation and assumptions and actual production may be less than is currently estimated.*** The Company prepares estimates of future gold and silver production for its operating mines. The Company cannot give any assurance that it will achieve its production estimates. The failure of the Company to achieve its production estimates could have a material and adverse affect on any or all of its future cash flows, profitability, results of operations and financial condition. These production estimates are dependent on, among other things, the accuracy of mineral reserve estimates, the accuracy of assumptions regarding ore grades and recovery rates, ground conditions, physical characteristics of ores, such as hardness and the presence or absence of particular metallurgical characteristics and the accuracy of estimated rates and costs of mining and processing.
>
> The Company's actual production may vary from its estimates for a variety of reasons, including, actual ore mined varying from

estimates of grade, tonnage, dilution and metallurgical and other characteristics, short-term operating factors such as the need for sequential development of ore bodies and the processing of new or different ore grades from those planned, mine failures, slope failures or equipment failures, industrial accidents, natural phenomena such as inclement weather conditions, floods, droughts, rock slides and earthquakes, encountering unusual or unexpected geological conditions, changes in power costs and potential power shortages, shortages of principal supplies needed for operation, including explosives, fuels, chemical reagents, water, equipment parts and lubricants, labour shortages or strikes, civil disobedience and protests, and restrictions or regulations imposed by government agencies or other changes in the regulatory environments. Such occurrences could result in damage to mineral properties, interruptions in production, injury or death to persons, damage to property of the Company or others, monetary losses and legal liabilities. These factors may cause a mineral deposit that has been mined profitably in the past to become unprofitable forcing the Company to cease production. It is not unusual in new mining operations to experience unexpected problems during the start-up phase. Depending on the price of gold or other minerals, the Company may determine that it is impractical to commence or, if commenced, to continue commercial production at a particular site.

As set forth in more detail in Gammon's Memorandum at pages 5 through 6, 9 through 12, and footnote 2:

(1) the statements about the projected production levels which Midas claims were fraudulently made are classic forward-looking statements;

(2) the Gammon Registration Statement contained (a) a comprehensive notice of caution concerning the forward-looking statements contained in the Registration Statement, and (b) a section on "Risk Factors" that contains a detailed description of inherent risks and uncertainties in any forward-looking estimates of future production at a precious metals mining operation just beginning its operation, *e.g.*, "[t]he Company has a limited history of producing precious metals from its properties and there can be no assurance that it will successfully expand or establish mining operations or partially produce precious metals"; and

(3) the Risk Factors were anything but boilerplate and described numerous problems and risks that could occur with a new mining operation such as "equipment failures," "inclement weather,"

- 6 -

>   "varying ore body conditions, "shortages of principal supplies," all
>   of which were timely disclosed to have occurred to some degree in
>   the first quarter of 2007.[4]

The Underwriters are not alleged to have had anything to do with the preparation of any of the statements of projected production rates, or even to have had any knowledge of them prior to their publication or disclosure. Rather, it is alleged that "the Underwriter Defendants, through their required due diligence into Gammon, knew or should have known that Defendant Gammon was not on schedule to produce 400,000 gold equivalent ounces in 2007 and that it was, in fact, 30% below that mark," and that they "knew or should have known that Defendant Gammon's representation about its scheduled production were false." (Compl. III ¶¶ 42, 44.) In addition, it is alleged that, in committing fraud, "the Underwriting Defendants took substantial steps to aid and abet Gammon's fraud upon Midas, including but not limited to, by executing the Registration Statement and/or failing to ensure that the Registration Statement was free from material misstatements and omissions." (Compl. III ¶ 120.)

## ARGUMENT

### AS MIDAS FAILS TO ADEQUATELY ALLEGE ANY WRONGDOING ON THE PART OF THE UNDERWRITERS, THE SECOND, THIRD AND SIXTH CAUSES OF ACTION AGAINST THEM SHOULD BE DISMISSED WITH PREJUDICE

As Gammon explains in its Memorandum at pages 15 through 21, Midas totally fails to satisfy the heightened pleading requirements of Rule 9(b) and demonstrate with particularized allegations how the Defendants purportedly defrauded Midas by giving guidance and estimates in advance of the Gammon Registration Statement. Accordingly, Midas' First through Third,

---

[4] *See* Compl. III ¶ 68 (Midas admitting that Gammon had disclosed that it experienced "unexpected equipment problems" but misleadingly omitting the other problem areas disclosed by Gammon such as lower production due to "repairs to the crushing facility, and some unusual snowfall through the Sierra Madre Mountains resulting in delays of critical consumables to the site." (Gammon Mem. at 5, 13.)).

and Sixth Causes of Action should be dismissed as a matter of law.[5]  With respect to the Underwriters, the only claims against them — the Second, Third and Sixth Causes of Action — fail for the same reasons.

### A.    <u>Midas Fails To State A Fraud Claim Against The Underwriters</u>

Midas' Sixth Cause of Action against the Underwriters for aiding and abetting fraud is based on nothing more than the conclusory assertion that they "took substantial steps to aid and abet Gammon's fraud upon Midas . . . . "  (Compl. III ¶ 120.)  Under New York law, a claim of aiding and abetting fraud requires a plaintiff to plead with particularity under Rule 9(b), the existence of a fraud, a defendant's knowledge of the fraud, and a defendant's substantial assistance to advance the fraud's commission.  *Wight v. Bankamerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000).  The Sixth Cause of Action contains no allegation at all as to the Underwriters' purported "knowledge" of the fraud, but, as with all of the other claims, it simply incorporates by reference all of the preceding allegations in the Complaint.  In the 114 paragraphs which precede the fraud claim, the only purported allegations with respect to the Underwriters' alleged "knowledge of the fraud" are the following:

> 42.     The Underwriter Defendants, through their required due diligence into Gammon, knew or should have known that Defendant Gammon was not on schedule to produce 400,000 gold equivalent ounces in 2007 and that it was, in fact, 30% below that mark.
>
> \* \* \*
>
> 44.     The Underwriter Defendants, through their required due diligence into Gammon, know or should have known that

---

[5]    Midas does not allege, as it does against Gammon, that the Underwriters violated Section 10(b) of the Securities Act of 1934 and Rule 10b-5 thereunder, presumably because these "aiding and abetting"-type allegations are clearly not actionable under the anti-fraud provision of the federal securities laws.  *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 178 (1994).  But Midas' common law fraud claim incorporates by reference all of the allegations of the 10b-5 claim (the First Cause of Action), as well as the two claims brought under the 33 Act (the Second and Third Causes of Action).

>    Defendant Gammon's representations about its scheduled production were false.

Clearly, these allegations are inadequate, since even pleading that a defendant *knew* a representation was false combined with the alternative allegation of *reckless disregard* is insufficient to allege common law aiding and abetting. *See, e.g., Filler v. Hanvit Bank*, 339 F. Supp. 2d 553, 560 (S.D.N.Y. 2004), *aff'd*, 156 Fed.Appx. 413 (2d Cir. 2005). *A fortiori*, the weaker alternative allegation of "knew or should have known" is obviously deficient, and the Sixth Cause of Action should be dismissed as to the Underwriters on this basis alone. *Williams v. Bank Leumi Trust Co.,* No. 96 Civ. 6695 (LMM), 1997 WL 289865, at *5 (S.D.N.Y. May 30, 1997); *In re WorldCom, Inc. Secs. Litig.*, 382 F. Supp. 2d 549, 560 (S.D.N.Y. 2005) (granting underwriter defendants' motion to dismiss aiding and abetting common law fraud claim where plaintiff alleged that underwriter defendants "knew or recklessly disregarded" the fraud).

Moreover, as there are also no allegations at all about which Underwriter knew what about Gammon's projected production levels and how they could have known they were false, Midas' fraud claim against the Underwriters additionally fails for this reason as well. *See Druyan v. Jagger*, 508 F. Supp. 2d 228, 242 (S.D.N.Y. 2007) (granting defendants' motion to dismiss under Rule 9(b) where plaintiff failed to specify each defendant's role in the alleged fraud); *Natowitz v. Mehlman*, 542 F. Supp. 674, 676 (S.D.N.Y. 1982) (pre-PSLRA decision granting defendants' motion to dismiss Section 10(b) claim where plaintiff failed to plead fraud with particularity required by Rule 9(b) as to each defendant).

Furthermore, "to meet the pleading standard of Rule 9(b), this Court has repeatedly required, among other things, that the pleading 'explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (*quoting Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). That requires Midas to have stated with particularity the

specific facts in support of its belief that Gammon's statements concerning projected production levels were false when made and how Midas was defrauded by those statements. *Rombach*, 355 F.3d at 172. Just as in *Rombach* where the plaintiffs failed to adequately plead under Rule 9(b) that the forward-looking statements were fraudulent, here Midas has similarly failed to allege with any particularity how they were defrauded by the production projections for 2007 that were identified as forward-looking statements and were accompanied by extensive and specific risk factors that could adversely affect production levels. (Gammon Mem. at 9-18.) Midas alleges nothing more than that the projections were inaccurate and Defendants knew or should have know they were inaccurate. As those allegations do not come close to satisfying Rule 9(b), Midas' common law fraud claim should therefore be dismissed. *See Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.*, No. 03 Civ. 0377 (NRB), 2003 WL 21767739, at *5 (S.D.N.Y. July 30, 2003) (forward-looking statements or statements that are "an expression of corporate optimism and/or an opinion as to future events," such as the statements concerning Gammon's projected production levels, are not actionable common law fraud in New York).

For all of these reasons, Midas' Sixth Cause of Action for common law fraud should be dismissed.

### B.      Midas' Fails To State Claims Against The Underwriters Under Sections 11 and 12(a)(2)

The lack of any well-pleaded allegations suggesting fraudulent conduct on the part of the Underwriters likewise dooms Midas' other two claims against them, the Second and Third Causes of Action under Section 11 and Section 12(a)(2) of the 33 Act. Those claims are alleged to arise from the same single course of alleged fraudulent conduct that is at the heart of the Complaint and all of its constituent claims, *i.e,* Gammon's alleged overstated estimates of gold and silver production for 2007.

As a preliminary matter, Midas' Sections 11 and 12(a)(2) claims are subject to the heightened pleading requirements of Rule 9(b), because they are based on the same alleged fraudulent course of conduct as the rest of the claims against Gammon, the Individual Defendants and the Underwriters. *See Rombach*, 355 F.3d at 170 (affirming district court's application of Rule 9(b) to Section 11 and 12(a)(2) claims where the "gravamen of the complaint" was fraud). (*See* Gammon Mem. at 15-16.)[6] Because Midas' Complaint III is bereft of any allegations (again, subject to the heightened pleading requirements of Rule 9(b)) that Gammon, much less the Underwriters, intended to defraud Midas by virtue of the alleged inflated projection, the Section 11 and Section 12(a)(2) claims are simply not actionable and must be dismissed. (Gammon Mem. at 18.) Second, the Section 11 and 12(a)(2) claims against the Underwriters are based entirely on Gammon's alleged overstated estimates of gold and silver production for 2007 and, as Gammon establishes in its Memorandum, those estimates and projections are not actionable because (1) they are forward-looking statements that fall within the safe harbor for forward-looking statements in the Registration Statement (15 U.S.C. §§ 77z-2(a) and (c) (1998)) (Gammon Mem. at 9-14), and (2) they are barred by the "bespeaks caution" doctrine because the risks that might have caused Gammon to allegedly fall short of its production estimates were clearly spelled out in the Registration Statement (Gammon Mem. at 14-15).

---

[6]  Indeed, in *Rombach*, as here, the fraud claim incorporated the allegations contained in the Section 11 claim, thereby justifying an analysis of the Section 11 claim in light of the fraud claim. (*See* Compl. III ¶ 115 (the Sixth Cause of Action for fraud), which repeats and realleges paragraphs 1 through 114, including the Section 11 and Section 12(a)(2) claims in paragraphs 82 through 100.)

## CONCLUSION

For all of the foregoing reasons, and those set forth in Gammon's Memorandum in support of its motion to dismiss, the Second, Third, and Sixth Causes of Action in Midas' Complaint III must be dismissed with prejudice as against the Underwriters.

Dated: December 21, 2007
       New York, New York

FULBRIGHT & JAWORSKI L.L.P.
*Attorneys for Defendant BMO Nesbitt Burns Inc., Scotia Capital Inc., and TD Securities Inc.*

By: /s/ *Philip M. Smith*
Daniel R. Murdock (DM 1498)
Philip M. Smith (PS 8132)
Kate Woodall (not yet admitted)

666 Fifth Avenue
New York, NY 10103
psmith@fulbright.com
(212) 318-3000