Brooke E. Pietrzak (BP-7314)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY 10177
(212) 415-9200

Thomas P. Swigert (admitted *pro hac vice*)
F. Matthew Ralph (*pro hac vice* pending)
John Rock (admitted *pro hac vice*)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

*Attorneys for Defendants Gammon Gold Inc.,*
*Fred George, Bradley Langille,*
*Russell Barwick, and Colin Sutherland*
*(collectively, the "Gammon Defendants")*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MIDAS FUND, INC.,<br><br>             Plaintiff,<br><br>vs.<br><br>GAMMON GOLD INC., FRED GEORGE, BRADLEY LANGILLE, RUSSELL BARWICK, COLIN SUTHERLAND, BMO NESBITT BURNS INC., SCOTIA CAPITAL INC., and TD SECURITIES INC.,<br><br>             Defendants. | Index No. 07 CV 6707 (NRB) |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## GAMMON GOLD INC.'S AND THE INDIVIDUAL DEFENDANTS'
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................ 1

BACKGROUND FACTS ..................................................................................................... 3

I.     Midas' Allegations ................................................................................................... 3

II.    Gammon's Cautionary Statements ........................................................................... 5

       A.     April 10, 2007 Registration Statement.................................................... 5

       B.     2007 Press Releases ................................................................................. 6

III.   Procedural History ................................................................................................... 7

LEGAL STANDARD AND DOCUMENTS THE COURT MAY CONSIDER ......................... 8

ARGUMENT ....................................................................................................................... 8

I.     MIDAS' FEDERAL CLAIMS SHOULD BE DISMISSED (COUNTS I-IV) ................. 8

       A.     Gammon's Statements Are Forward-Looking Statements Protected by the Safe
              Harbor Provisions of the PSLRA (Counts I-III) ...................................... 9

              1.    Gammon's Statements About Its Future Mineral Production Are
                    Inherently Forward-Looking ........................................................ 9

              2.    Gammon Properly Identified Its Statements As Forward-Looking .......... 11

              3.    Gammon's Forward-Looking Statements Were Accompanied by
                    Meaningful Cautionary Language ............................................... 12

       B.     Gammon's Statements Were Immaterial Under the "Bespeaks Caution" Doctrine
              ................................................................................................... 13

       C.     Midas Fails to Plead Its Federal Securities Claims With Sufficient Particularity As
              Required by the PSLRA and Rule 9(b) (Counts I-III) ............................. 15

              1.    Midas Fails To Allege That Gammon's Statements Were False When
                    Made (Counts I-III) ................................................................... 15

              2.    Midas Fails to Allege Facts Giving Rise to a Strong Inference of Scienter
                    (Count I) ................................................................................... 17

       D.     Midas Fails To Plead Loss Causation (Count I-III) ................................ 20

i

　　　　　1.　　Midas' Losses Were Caused by Materialization of a Disclosed Risk, Not by Materialization of a Concealed Risk ................................................... 21

　　　　　2.　　Midas Failed to Sell Its Stock or Tender It Back (Count III) ................... 21

　　　E.　Because Midas Fails To Allege a Predicate Securities Violation, Midas' Control Person Claims Also Fail (Count IV) ..................................................... 22

II.　　MIDAS' STATE LAW CLAIMS SHOULD BE DISMISSED (COUNTS V-VIII) ....... 22

　　　A.　Midas Fails to Plead Its Common Law Fraud Claim with Sufficient Particularity (Count VI) ......................................................................................... 22

　　　B.　Midas' Negligent Misrepresentation, NYDAP, and Unjust Enrichment Claims Are Preempted by the Martin Act (Counts V, VII, VIII) ..................................... 23

　　　C.　The New York Deceptive Acts and Practices Statute Does Not Apply to Securities Claims (Count VIII) .............................................................................. 24

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bell Atlantic Corp. v. Twombly*,
    127 S.Ct. 1955 (2007)...................................................................................................22

*Berger v. E\*Trade Group, Inc.*,
    No. 600721/99, 2000 WL 360092 (N.Y. Sup. Ct. Mar. 28, 2000) .........................24

*Davidoff v. Farina*,
    No. 04 Civ. 7617(NRB), 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ...............19

*Dujardin v. Liberty Media Corp.*,
    359 F. Supp. 2d 337 (S.D.N.Y. 2005)....................................................................23

*Ehlert v. Singer*,
    245 F.3d 1313 (11th Cir. 2001) ...............................................................................12

*Fellman v. Electro Optical Sys. Corp.*,
    No. 98 Civ. 6403 LBS, 2000 WL 489713 (S.D.N.Y. April 25, 2000) ...................11

*Halperin v. eBanker USA.com*,
    295 F.3d 352 (2d Cir. 2002)...........................................................................13, 14

*Harris v. Ivax Corp.*,
    182 F.3d 799 (11th Cir. 1999) ..........................................................................10, 11

*Hillson Partners Ltd. P'ship v. Adage, Inc.*,
    42 F.3d 204 (4th Cir. 1994) ............................................................................ passim

*In re Aegon N.V. Secs. Litig.*,
    No. 03 Civ. 0603(RWS), 2004 WL 1415973 (S.D.N.Y. June 23, 2004) ............9, 10

*In re AOL Time Warner Sec. and "ERISA" Litig.*,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004)....................................................................21

*In re Corning Secs. Litig.*,
    No. 01-CV-6580-CJS, 2004 WL 1056063 (W.D.N.Y. April 9, 2004)....................10

*In re Crude Oil Commodity Litig.*,
    No. 06 Civ. 6677(NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007)................22

*In re Duane Reade Inc. Secs. Litig.*,
    No. 02 Civ. 6478(NRB), 2003 WL 22801416 (S.D.N.Y Nov. 25, 2003) .........10, 11

*In re Gas Reclamation, Inc. Secs. Litig.*,
    733 F. Supp. 713 (S.D.N.Y. 1990).........................................................................24

*In re Gilat Satellite Networks, Ltd.*,
   No. Cv-02-1510 (CPS), 2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005) ..................................9

*In re IAC/Interactivecorp Secs. Litig.*,
   478 F. Supp. 2d 574 (S.D.N.Y. 2007).....................................................................................8

*In re JP Morgan Chase Secs. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005)...................................................................................15

*In re Livent, Inc. Noteholders Secs. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)...................................................................................14

*In re Marsh & McLennan Cos., Inc. Secs. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006)...................................................................................23

*In re Open Joint Stock Co. "Vimpel Comms." Secs. Litig.*,
   No. 04 Civ. 9742(NRB), 2006 WL 647981 (S.D.N.Y. March 14, 2006)...............................19

*In re Sierra Wireless, Inc. Secs. Litig.*,
   482 F. Supp. 2d 365 (S.D.N.Y. 2007)...................................................................................12

*In re Silicon Graphics Inc. Secs. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ...............................................................................................20

*In re Sina Corp. Secs. Litig.*,
   No. 05 Civ. 2154(NRB), 2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006) ...............................14

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)..................................................................................................18

*Kemp v. Universal Am. Fin. Corp.*,
   No. 05 Civ. 9883(JFK), 2007 WL 86942 (S.D.N.Y. Jan. 10, 2007) ..........................12, 13, 14

*Leider v. Ralfe*,
   387 F. Supp. 2d 283 (S.D.N.Y. 2005)...................................................................................23

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005)............................................................................................20, 21

*Limantour v. Cray Inc.*,
   432 F. Supp. 2d 1129 (W.D. Wash. 2006).............................................................................10

*Manufacturers Life Ins. Co. v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
   No. 99 Civ. 1944(NRB), 2000 WL 709006 (S.D.N.Y. June 1, 2000).....................8, 19, 22, 23

*Meyer v. Biopure Corp.*,
   221 F. Supp. 2d 195 (D. Mass. 2002) ...................................................................................10

*Miller v. Champion Enterprises, Inc.*,
    346 F.3d 660 (6th Cir. 2003) ..........................................................................................12

*Morin v. Trupin*,
    747 F.Supp 1051 (S.D.N.Y. 1993)...................................................................................21

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).................................................................................. passim

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
    98 F.3d 2 (2d Cir. 1996)..................................................................................................14

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2002).................................................................................. passim

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) ..........................................................................................17

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000).................................................................................................8

*Salinger v. Projectavision, Inc.*,
    934 F. Supp. 1402 (S.D.N.Y. 1996).................................................................................18

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., Inc.*,
    75 F.3d 801 (2d Cir. 1996)..............................................................................................19

*Schoenhaut v. Am. Sensors, Inc.*,
    986 F. Supp. 785 (S.D.N.Y. 1997)...................................................................................10

*SEC v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996)..........................................................................................22

*Stevelman v. Alias Research Inc.*,
    174 F.3d 79 (2d Cir. 1999)..............................................................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    -- U.S. --, 127 S.Ct. 2499 (2007) ..............................................................................18, 20

*Whitman Realty Group, Inc. v. Galano*,
    838 N.Y.S.2d 585 (N.Y. App. Div. 2007) ......................................................................23

## STATUTES

15 U.S.C. 77z-2(i)(1)(B).......................................................................................................17

15 U.S.C. § 77l(a).................................................................................................................21

15 U.S.C. § 77l(a)(2).............................................................................................................21

15 U.S.C. § 77z-2(i)(1)(B) ..................................................................................9

15 U.S.C. § 77z-2(i)(1)(D) ................................................................................10

15 U.S.C. § 77z-2(c) ..........................................................................................12

15 U.S.C. § 77z-2(c)(1) .......................................................................................9

15 U.S.C. § 78u-4(b)(2) .....................................................................................17

15 U.S.C. § 78u-5(i)(1)(B) ............................................................................9, 17

15 U.S.C. § 78u-5(i)(1)(D) ................................................................................10

15 U.S.C. § 78u-5(c)(1) .......................................................................................9

N.Y. Gen. Bus. Law §§ 349 and 350 ............................................................22, 24

N.Y. Gen. Bus. Law § 352(1) (McKinney 2007) .............................................23

Private Securities Litigation Reform Act of 1995 ("PSLRA") ................... passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) .................................................................................. passim

Fed. R. Civ. P. 12(b)(6) ...................................................................................1, 8

## INTRODUCTION

Plaintiff Midas Fund, Inc. ("Midas") is a professional investment company whose specialty is investing in precious metals mining companies like Defendant Gammon Gold Inc. ("Gammon").  Gammon is a mid-tier producer of gold and silver whose primary assets are two gold and silver mines in Mexico.  Before the events giving rise to this case, Midas had profited significantly from three previous investments in Gammon.  When Gammon announced a secondary offering in April 2007 to finance operations, Midas once again bought shares.  In May 2007, Gammon reported a first quarter loss due to, among other things, unanticipated equipment failures and delays in critical supplies.  After the announcement of these first quarter results, Midas, alone among Gammon's investors, complained that it had paid too much for its Gammon shares and filed this lawsuit alleging fraud by hindsight.  Midas now has twice amended its original Complaint in an attempt to meet the relevant pleading standards.  Through this Rule 12(b)(6) motion, Gammon asks the Court, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Fed. R. Civ. P. 9(b), and New York state law, to dismiss with prejudice Midas' third attempt to allege viable claims.

Midas alleges that, between January 11 and May 1, 2007, Gammon represented in various press releases and other communications that it was "on schedule" to produce or "targeting" production of 400,000 gold equivalent ounces by the end of calendar year 2007. Midas claims that because Gammon's first quarter actual production was not 100,000 gold equivalent ounces (1/4 of 400,000), Gammon must have knowingly committed fraud.  What Midas fails to disclose, but what the Court may consider on this motion,[1] are the following facts:

---

[1]    All of the documents alleged in the Second Amended Complaint to contain false or misleading statements are attached to the Declaration of John Rock ("Rock Decl.") and submitted in conjunction with this motion.

- Gammon's statements about its 2007 "schedules," "targets," and "annualized production rate" were all forward-looking statements and specifically identified as such at the time they were made;

- Each of Gammon's public statements was accompanied by extensive cautionary language; and

- The cautionary language identified the very risks that ultimately materialized and impaired Gammon's first quarter production.

These facts are critical, and dispositive, because they establish that Gammon's statements fall within the safe harbors of the PSLRA and the "bespeaks caution" doctrine and therefore are not actionable. Midas' federal claims should be dismissed for this reason alone. Midas' federal claims should also be dismissed because Midas fails to allege, as required by the PSLRA and Rule 9(b), sufficient facts to show (1) that Gammon's statements were false when made, (2) that Gammon acted with scienter, or (3) that Gammon's alleged statements caused Midas' losses. Midas' state law claims fail for similar reasons, or are preempted by the Martin Act, or are inapplicable to securities transactions.

The law does not allow a sophisticated investor to allege fraud by hindsight based on qualified estimates of contingent, future events. Here, Midas, a professional investment company, is not only a sophisticated investor, it is a specialist at investing in precious metals companies like Gammon. Gammon's business is gold and silver exploration and mining, one of the most speculative and uncertain of all ventures, and most of its gold and silver is still in the ground. Despite three chances, Midas has not pled viable securities claims that meet the requirements of the PSLRA and Rule 9(b), or state law. The Court should therefore dismiss Midas' claims with prejudice.

## BACKGROUND FACTS

### I.    MIDAS' ALLEGATIONS

Plaintiff Midas is a professional investment company that invests most of its assets in precious metals companies.  Second Amended Complaint ("SAC") ¶ 5.  Defendant Gammon is a Nova Scotia-based mid-tier precious metals mining company whose shares are listed on the American and Toronto Stock Exchanges.  SAC ¶ 7.  Gammon's two main gold and silver mines are Ocampo and El Cubo, both located in Mexico.  SAC ¶ 7; Rock Decl. Ex. 1 (Jan. 11, 2007 press release).  Defendants Fred George, Russell Barwick, Bradley Langille and Colin Sutherland (collectively, the "Individual Defendants") are current and former officers of Gammon.  SAC ¶¶ 8-15.  BMO Nesbitt Burns Inc. ("BMO"), Scotia Capital Inc. ("Scotia") and TD Securities Inc. ("TD") (collectively, the "Underwriter Defendants") are Canadian corporations who underwrote the secondary offering by Gammon at issue in this case.  SAC ¶¶ 16-18, 43.

At the outset of each of its three successive pleadings, Midas summarized the gravamen of its complaint in the same way, i.e.:

> "This action arises out of fraud carried out by Defendant Gammon, the Individual Defendants and Underwriter Defendants in connection with the April 2007 sale of shares in Gammon … ."

SAC ¶ 1 (emphasis added).  Midas alleges that Gammon's public statements about its annualized production rate were false and misleading, and that Midas suffered damages of $2.4 million.  Midas alleges eight causes of actions (referred to herein as "Counts"):

**Count I.**    Violation of § 10(b) of the 1934 Exchange Act and Rule 10b-5 by Gammon and the Individual Defendants.

**Count II.**    Violation of § 11 of the 1933 Securities Act by All Defendants.

**Count III.**    Violation of § 12 of the 1933 Securities Act by All Defendants.

**Count IV.**     Violation of § 20(a) of the 1934 Exchange Act and § 15 of the 1933 Securities Act by the Individual Defendants.

**Count V.**     Unjust Enrichment against Gammon.

**Count VI.**     Common Law Fraud against All Defendants.

**Count VII.**     Negligence against Gammon.

**Count VIII.**     Deceptive Acts and Practices in Violation of N.Y. Business Law §§ 349 and 350 against Gammon.

Midas alleges that Gammon made the following public statements:

- In a January 11, 2007 press release, Gammon stated that it is "currently producing at an annualized production run rate of 400,000 gold equivalent ounces (208,000 ounces of gold and 8.9-million ounces of silver)." SAC ¶¶ 32, 33.

- In a January 16 press release, Gammon stated that it is "on schedule to produce in excess of 400,000 gold equivalent ounces…per year." SAC ¶ 34.

- In January 22 and 29 press releases, Gammon repeated the January 16 statement regarding projected annual production. SAC ¶ 35.

- In a February 26 presentation to investors at the annual BMO ("Bank of Montreal") Capital Markets conference, Gammon's President, Fred George, stated that Gammon was on schedule to produce 400,000 gold equivalent ounces in calendar year 2007. SAC ¶¶ 36, 37.

- In March 28 and April 2 press releases, Gammon stated that it is "targeting production of 400,000 gold equivalent ounces…in 2007." SAC ¶¶ 38, 39.

- In an April 3 press release, Gammon stated that it is on target to produce 400,000 gold equivalent ounces. SAC ¶ 40.

- In April 24 and May 1 press releases, Gammon stated that it is on schedule to produce 400,000 gold equivalent ounces in 2007. SAC ¶¶ 50, 55.

In April 2007, Gammon announced a secondary offering of 10,000,000 common shares at a price of $20.00 (Canadian) per share to raise $200,000,000 in equity financing. SAC ¶ 41. Gammon filed a registration statement/prospectus ("Registration Statement"), which incorporated by reference Gammon's prior press releases. Gammon sold the entire offering to the Underwriter Defendants, who then sold the shares to investors, including Midas. SAC ¶ 41-

4

47, 49.  Midas purchased 400,000 shares of Gammon stock for $8,000,000 (Canadian).  Midas alleges it relied upon Gammon's statements listed above.  SAC ¶¶ 48-49.

Midas further alleges that on May 10, 2007, Gammon "recanted" its prior statements by stating that it was "targeting a production <u>rate</u> of 400,000 gold equivalent ounces…during 2007." SAC ¶ 56 (emphasis in SAC).  Midas claims that after the announcement Gammon's share price "fell dramatically," resulting in Midas' loss of millions of dollars.  SAC ¶ 65.

On May 10, 2007, Gammon also released its 2007 first quarter operational report.  In the Management Discussion and Analysis section of the report, Gammon stated that production had been lower than expected due to "repairs to the crushing facility, and some unusual snowfall through the Sierra Madre resulting in delays of critical consumables to the site."  Rock Decl. Ex. 16, at 2.

## II.    GAMMON'S CAUTIONARY STATEMENTS

### A.    <u>April 10, 2007 Registration Statement</u>

Gammon's April 10, 2007 Registration Statement, upon which Midas alleges it relied to buy Gammon shares, contained the following section entitled, Special Notice Regarding Forward-Looking Statements and Other Information:

> Certain statements included or incorporated by reference herein, including information as to the future financial or operating performance of the Company, its subsidiaries and its projects, constitute forward-looking statements.  ***The words*** "believe", "expect", "anticipate", "contemplate", ***"target"***, "plan", "intends", "continue", "budget", "estimate", "may", "will", ***"schedule"*** ***and similar expressions identify forward-looking statements. Forward-looking statements include, among other things, statements regarding targets, estimates and assumptions in respect of gold production and prices***….  Forward-looking statements are necessarily based upon a number of estimates and assumptions that, while considered reasonable by the Company, are inherently subject to significant business, economic, competitive, political and social uncertainties and contingencies. ***Many factors could cause the Company's actual results to differ***

> *materially from those expressed or implied in any forward-looking statements made by, or on behalf of, the Company. Such factors include*, among others, known and unknown uncertainties and risks relating to additional financing requirements, reserve and resource estimates, commodity prices, hedging activities, exploration, *development and operating risks*, illegal miners, political and foreign risk, uninsurable risks, competition, limited mining operations, *production risks*, environmental regulation and liability, government regulation, currency fluctuations, recent losses and write-downs, restrictions in the Company's loan facility, dependence on key employees, possible variations of ore grade or recovery rates, *failure of plant, equipment or process to operate as anticipated, accidents* and labour disputes. Investors are cautioned that forward-looking statements are not guarantees of future performance and, accordingly, investors are cautioned not to put undue reliance on forward-looking statements due to the inherent uncertainty therein. Forward-looking statements are made as of the date hereof, or in the case of documents incorporated by reference herein, as of the date of such document, and the *Company disclaims any intent or obligation to update publicly such forward-looking statements, whether as a result of new information, future events or results or otherwise.*

Rock Decl. Ex. 11, at 3.

**B.**     **2007 Press Releases**

The press releases that Midas has identified contained the following cautionary language

with minor and immaterial variations:

> This News Release includes certain "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995 and "forward-looking information" within the meaning of applicable Canadian securities legislation. *All statements other than statements of historical fact, included in this release, including, without limitation, statements regarding the annualized production run rate at the Ocampo and El Cubo Mines*, potential mineralization and reserves, exploration results, and future plans and objectives of Gammon Lake Resources, *are forward-looking statements (or forward-looking information) that involve various risks and uncertainties.* There can be no assurance that such statements will prove to be accurate and actual results and future events could differ materially from those anticipated in such statements. *Important factors that could cause actual results to differ materially from Gammon Lake's expectations include, among others, risks related to international*

6

*operations*, the actual results of current exploration activities, conclusions of economic evaluations and changes in project parameters as well as future prices of gold and silver, ***as well as those factors discussed in the section entitled "Risk Factors" in Gammon Lake's Form 40-F and Annual Information Form*** as filed with the United States Securities and Exchange Commission. Although Gammon Lake has attempted to identify important factors that could cause actual results to differ materially, there may be other factors that cause results not to be as anticipated, estimated or intended.

There can be no assurance that such statements will prove to be accurate as actual results and future events could differ materially from those anticipated in such statements. Accordingly, readers should not place undue reliance on forward-looking statements. ***Gammon Lake does not undertake to update any forward-looking statements that are included herein, except in accordance with applicable securities laws.***

Rock Decl. Ex. 1; *see also id.* Exs. 2 – 4, 7 – 9, 12 – 15.[2]

## III.    PROCEDURAL HISTORY

Midas filed a Complaint on or about July 25, 2007 and an Amended Complaint as of right on August 6, 2007. On September 27, 2007, "after having conducted further research and analysis," Midas sought the Court's permission to amend its complaint again "to add additional defendants, namely certain officers and directors of Gammon, as well as three firms which acted as underwriters for the [Gammon] offering . . . ." Rock Decl. Ex. 19. By letter to counsel for

---

[2] Among the risks that Gammon had identified in its Form 40-F and Annual Information Form for fiscal year 2005 were the following: (1) "No History of Profitability. The Corporation is a development stage company with no history of profitability. There can be no assurance the operations of the corporation will be profitable in the future…."; (2) "The exploration and development of mineral deposits involves a high degree of financial risk over a significant period of time of which even a combination of careful evaluation, experience and knowledge of management may not eliminate…."; (3) "The Corporation is subject to risks normally encountered in the mining industry…." Rock Decl. Ex. 17, at 17, 18. Gammon's Form 40-F and Annual Information Form for fiscal year 2006 listed a number of specific risk factors, including: "The Corporation cannot give any assurance that it will achieve its production estimates. . . . The Corporation's actual production may vary from its estimates for a variety of reasons, including . . . mine failures, slope failures or equipment failures; industrial accidents; [or] natural phenomena such as inclement weather conditions . . . ." *Id.* Ex. 18 at 41.

Midas and Gammon dated October 1, 2007, the Court stated that it would "permit the plaintiff to amend its complaint one last time," and Midas exercised that right on October 12, 2007 by filing the Second Amended Complaint.  Rock Decl. Ex. 20.

### LEGAL STANDARD AND DOCUMENTS THE COURT MAY CONSIDER

In evaluating a motion to dismiss under Rule 12(b)(6), the court should accept as true all well-pleaded factual allegations and dismiss the complaint only if it appears that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief.  *In re IAC/Interactivecorp Secs. Litig.*, 478 F. Supp. 2d 574, 584 (S.D.N.Y. 2007) (quotation omitted). "However, while the pleading standard is a liberal one, bald assertions and conclusory allegations are insufficient to defeat a motion to dismiss."  *Manufacturers Life Ins. Co. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, No. 99 Civ. 1944(NRB), 2000 WL 709006, at *2 (S.D.N.Y. June 1, 2000).  A court should not "accept allegations that are contradicted or undermined by other more specific allegations in the complaint or by written materials properly before the court." *IAC/Interactivecorp*, 478 F. Supp. 2d at 585.  Written materials properly before the court on a motion to dismiss include "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citations omitted).

### ARGUMENT

### I.    MIDAS' FEDERAL CLAIMS SHOULD BE DISMISSED (COUNTS I-IV)

Midas' federal securities claims should be dismissed because 1) Gammon's statements fall within the safe harbor for forward-looking statements and the "bespeaks caution" doctrine, 2)

Midas fails to plead its claims with the particularity required by the PSLRA and Rule 9(b), and

3) Midas has failed to plead loss causation.

**A.     Gammon's Statements Are Forward-Looking Statements Protected by the Safe Harbor Provisions of the PSLRA (Counts I-III)**

Under the PSLRA, forward-looking statements, whether written or oral, cannot give rise to liability under the federal securities laws as long as the statements are identified as forward-looking and are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements." 15 U.S.C. § 78u-5(c)(1); 15 U.S.C. § 77z-2(c)(1); *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2002).  Because Gammon's statements identified in the Second Amended Complaint fall within this statutory safe harbor, Midas' Counts I (Rule 10b-5), II (Section 11), and III (Section 12) must be dismissed.

**1.     Gammon's Statements About Its Future Mineral Production Are Inherently Forward-Looking**

Midas claims it relied on Gammon's statements that it was "targeting production" of 400,000 gold equivalent ounces or, alternatively, "on schedule" to produce 400,000 gold equivalent ounces.  These statements fall within the statutory definition of "forward-looking" statements and were identified as such by Gammon in every public disclosure at issue.

The PSLRA definition of "forward-looking statement" includes "a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer."  15 U.S.C. § 78u-5(i)(1)(B); 15 U.S.C. § 77z-2(i)(1)(B); *see also In re Aegon N.V. Secs. Litig.*, No. 03 Civ. 0603(RWS), 2004 WL 1415973, at *11-12 (S.D.N.Y. June 23, 2004); *In re Gilat Satellite Networks, Ltd.*, No. Cv-02-1510 (CPS), 2005 WL 2277476, at *16 (E.D.N.Y. Sept. 19, 2005) (dismissing plaintiff's claim where defendant's plan to release service to customers in the future was a forward-looking statement).  The statutory

definition also includes "any statement of assumptions underlying or relating to" those plans or objectives.  15 U.S.C. § 78u-5(i)(1)(D); 15 U.S.C. § 77z-2(i)(1)(D); *see Aegon*, 2004 WL 1415973, at *11-12; *Meyer v. Biopure Corp.*, 221 F. Supp. 2d 195, 203 (D. Mass. 2002).

   The statements alleged in the SAC are, on their face, statements regarding Gammon's "plans and objectives" to produce 400,000 gold equivalent ounces in 2007.  All of these statements therefore fall within the statutory definition of a "forward-looking statement."  *See In re Duane Reade Inc. Secs. Litig.*, No. 02 Civ. 6478(NRB), 2003 WL 22801416, at * 5 (S.D.N.Y. Nov. 25, 2003) (granting defendants' motion to dismiss 10b-5 claim based on forward-looking statement regarding ability to meet "sales and earnings targets"); *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 212-13 (4th Cir. 1994) ("on target" and "on schedule" are forward-looking statements); *Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1154 (W.D. Wash. 2006) ("on target for delivery" is a forward-looking statement); *In re Corning Secs. Litig.*, No. 01-CV-6580-CJS, 2004 WL 1056063, at *17 (W.D.N.Y. April 9, 2004) (holding defendant's growth rate projections were forward-looking statements), *aff'd*, 2005 WL 714352 (2d Cir. Mar. 30, 2005); *Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 793 (S.D.N.Y. 1997).  Thus these statements cannot provide the basis for a securities fraud claim.

   Another way to determine whether a statement is forward-looking is by asking whether its truth or falsity is verifiable only by contingent future events.  If so, then the statement necessarily refers to future performance.  *See Harris v. Ivax Corp.*, 182 F.3d 799, 805 (11th Cir. 1999); *Aegon*, 2004 WL 1415973, at *12.  Gammon made the statements at issue in the early part of 2007.  Whether Gammon would, in fact, achieve actual production of 400,000 gold equivalent ounces by the end of 2007 was contingent upon its mining operations for the remainder of the year.  Statements that Gammon was "targeting production" or "on schedule to

10

produce" a certain amount of gold equivalent ounces are necessarily related to future

performance.[3]  *See Duane Reade*, 2003 WL 22801416 at *5.  Gammon never guaranteed future

performance; future performance was contingent on a wide range of future events that were

explicitly disclosed.  Thus the statements at issue are forward-looking and fall squarely within

the safe harbor.

### 2.    Gammon Properly Identified Its Statements As Forward-Looking

Gammon clearly identified all of its statements about annualized mine production as

"forward-looking" statements at the time it made those statements.  In Gammon's April 10, 2007

Registration Statement, which Gammon filed in connection with the secondary offering,

Gammon stated: "***The words*** …***"target"***…***"schedule"*** …***and similar expressions identify***

***forward-looking statements.***"  Rock Decl. Ex. 11, at 3  (emphasis added).  In each of the 2007

press releases on which Midas claims reliance, Gammon stated (with only immaterial differences

between the press releases):

> *All statements other than statements of historical fact, included*
> *in this release, including, without limitation, statements*
> *regarding the annualized production run rate at the Ocampo and*
> *El Cubo Mines*, potential mineralization and reserves, exploration
> results, *and future plans and objectives of Gammon Lake*
> *Resources, are forward-looking statements (or forward-looking*
> *information) that involve various risks and uncertainties.*

Rock Decl. Ex. 7 (March 28, 2007 press release) (emphasis added); *see also id.* Exs. 1, 2, 3, 4, 8,

9, 10, 12, 13, 14, 15 (emphasis added).  The expressions "targeting production" and "on

schedule" were forward-looking statements because (1) Gammon expressly identified the terms

---

3    A forward-looking statement need not employ the future tense.  There is no material
difference under the securities laws between the expressions "will produce" and "is targeting
production."  The fact that Gammon often used the present tense—"is targeting"—does not
take the statement out of the safe harbor.  *See Harris*, 182 F.3d at 805; *Fellman v. Electro
Optical Sys. Corp.*, No. 98 Civ. 6403 LBS, 2000 WL 489713, at *4-5 (S.D.N.Y. April 25,
2000) (analyzing statements that company "is poised to become" and "has the inside track"
as forward-looking).

"target" and "schedule" as indicating forward-looking statements, (2) the statements related to

Gammon's annualized production run rate, which Gammon identified as forward-looking, and

(3) the statements did not relate to historical fact but rather encompassed future plans and

objectives.  For these reasons, Gammon properly identified all of these statements as forward-

looking.

### 3. Gammon's Forward-Looking Statements Were Accompanied by Meaningful Cautionary Language

To qualify for the safe harbor, a company must include "meaningful" cautionary

language along with its forward-looking statements.  *See Rombach*, 355 F.3d at 173; *In re Sierra*

*Wireless, Inc. Secs. Litig.*, 482 F. Supp. 2d 365, 381-82 (S.D.N.Y. 2007).  Cautionary language

must be viewed as a whole.  *Rombach*, 355 F.3d at 176 ("While some of the cautionary

statements were formulaic, we conclude that as a whole they provided a sobering picture of

[Defendant's] financial condition and future plans.")); *Kemp v. Universal Am. Fin. Corp.*, No. 05

Civ. 9883(JFK), 2007 WL 86942, at *11 (S.D.N.Y. Jan. 10, 2007).  The PSLRA safe harbor

"does not require that the prospectus list *all* factors that might influence the company's financial

future," nor must it identify "*the* factor that ultimately belies a forward-looking statement."

*Ehlert v. Singer*, 245 F.3d 1313, 1320 (11th Cir. 2001) (citing *Harris*, 182 F.3d at 807).  An

issuer is "not required to detail every facet or extent of that risk to have adequately disclosed the

nature of the risk."  *Miller v. Champion Enterprises, Inc.*, 346 F.3d 660, 678 (6th Cir. 2003).

The PSLRA requires only that an issuer mention "important factors that could cause actual

results to differ materially from those in the forward-looking statement."  15 U.S.C. § 77z-2(c);

*see also Ehlert*, 245 F.3d at 1319-20.

Here, however, Gammon disclosed numerous categories of risk that encompass the very

risks that materialized to undercut its production rate.  Gammon disclosed, for example, that its

2007 production could be impaired by (1) "operating risks" and "production risks," including "failure of plant, equipment or process to operate as anticipated" and "accidents," and (2) "risks related to international operations, including … limited local infrastructure to support large scale mining operations." *See supra* pp. 5-7. The actual factors that undercut Gammon's first quarter production were "unexpected equipment problems," SAC ¶ 68, and "reduced output from the crushing and heap leach pad facilities during the first quarter due to repairs and maintenance and…delays of critical consumables to the site." Rock Decl. Ex. 16, at 2 (May 10, 2007 Management Discussion & Analysis). Equipment failures and lack of infrastructure were not only among the risks that Gammon expressly disclosed, they were among risks that any reasonable investor in a gold and silver mining operation would expect. *See Hillson*, 42 F.3d at 213-14. And, when it came to gold and silver mining, Midas was even more sophisticated than the hypothetical "reasonable investor" because Midas is a professional investment company that specializes in investing in mining operations. SAC ¶ 5.

Because the statements alleged in the SAC fall within the forward-looking safe harbor provisions of the PSLRA, Midas' Counts I, II, and III must be dismissed.

### B.    Gammon's Statements Were Immaterial Under the "Bespeaks Caution" Doctrine

The "bespeaks caution" doctrine, the common law corollary to the PSLRA safe harbor, provides that cautionary disclaimers may render statements immaterial. *Halperin v. eBanker USA.com*, 295 F.3d 352, 357 (2d Cir. 2002); *see also Kemp,* 2007 WL 86942, at *11 (granting defendant's motion to dismiss Section 10(b) and Section 20(a) claims). When cautionary language is present, the Court must analyze the alleged misstatements in their entirety to determine whether a reasonable investor would have been misled. *See Halperin*, 295 F.3d at 357.

Here, the statements upon which Midas claims it relied were individual sentences culled from a variety of press releases and SEC filings, the vast majority of which related to matters other than Gammon's production goals.  SAC ¶¶ 33-35, 37-40; Rock Decl. Exs. 1-13.  Furthermore, each of Gammon's alleged misstatements was accompanied by several paragraphs of cautionary language.  *See, e.g.*, Rock Decl. Exs. 1 – 9, 11 – 13, 17, 18.

To avoid application of the "bespeaks caution" doctrine, Midas must overcome the cautionary language "by showing, for example, that the cautionary language did not expressly warn of or did not directly relate to the risk that brought about plaintiffs' loss."  *Halperin*, 295 F.3d at 357.  Gammon's cautionary language, however, expressly identified the categories of risk that ultimately materialized.  Gammon thus "fully disclosed the risk of investment and was specific enough to warrant a reasonable investor's attention."  *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 9 (2d Cir. 1996); *see also In re Sina Corp. Secs. Litig.*, No. 05 Civ. 2154(NRB), 2006 WL 2742048, at *9 (S.D.N.Y. Sept. 26, 2006); *Kemp,* 2007 WL 86942, at *11.

Gammon's business is gold and silver mining in a foreign country. SAC ¶¶ 6-7.  Any reasonable investor would understand that Gammon "may run into unforeseen problems and delays."  *Hillson*, 42 F.3d at 213-14 (statements that a capital improvement project was "on schedule" were immaterial).  Furthermore, although the legal standard asks whether a reasonable investor would be misled, Midas is a specialist in the very type of investment at issue.  SAC ¶ 5.  Midas thus has far less basis than an ordinary investor to claim that it relied on Gammon's projections.  *See In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 439 (S.D.N.Y. 2001) (imposing enhanced duty on sophisticated investors to assimilate available information).

Under the circumstances in this case, Gammon's cautionary disclosures rendered the statements at issue immaterial under the federal securities laws. Counts I-III should thus be dismissed.

### C. Midas Fails to Plead Its Federal Securities Claims With Sufficient Particularity As Required by the PSLRA and Rule 9(b) (Counts I-III)

#### 1. Midas Fails To Allege That Gammon's Statements Were False When Made (Counts I-III)

The PSLRA and Rule 9(b) impose heightened pleading requirements for securities claims that are "premised on allegations of fraud." *Rombach*, 355 F.3d at 171. These heightened pleading standards apply to Sections 11 and 12(a)(2) claims as well as 10b-5 claims that sound in fraud. *Id.* at 171-72. As the Second Circuit in *Rombach* explained, the heightened pleading requirement of Rule 9(b) "serves to 'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Id.* at 171 (quotation omitted).

The PSLRA and Rule 9(b) require that a plaintiff plead the who, what, when, where, and why of fraud. *See Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999). While Midas has identified specific statements made by Gammon, it utterly fails to "allege facts indicating that the statements were false and misleading at the time they were made, because fraud cannot be pled by hindsight." *In re JP Morgan Chase Secs. Litig.*, 363 F. Supp. 2d 595, 624 (S.D.N.Y. 2005); *see also Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). Nor does Midas allege any facts that, if true, would lead to a strong inference of scienter. Because Midas has failed adequately to plead its claims after three attempts, its claims should be dismissed with prejudice.

> **a.    Midas Fails To Allege Facts Showing That Gammon's January 2007 Statements Were False When Made or That It Relied on Those Statements**

In press releases issued in January 2007, Gammon stated that it was "on schedule" to produce 400,000 gold equivalent ounces in 2007.  SAC ¶¶ 33-35; Rock Decl. Exs. 1 – 4.  In addition to these statements being inherently forward-looking, Midas alleges no facts whatsoever to show that Gammon's January 2007 statements were in any way false when made.  Midas only alleges weakly that "prior to January 2007 Defendant Gammon issued monthly reports on its production levels."  SAC ¶ 61.  Midas does not allege that any such report was available on January 29, much less what the report's contents were, or how the contents may have contradicted the January press releases.  *See, e.g., Novak*, 216 F.3d at 309 (requiring plaintiff to identify specific reports or statements that show defendants had access to contrary facts).

In fact, Gammon's January 11, 2007 press release simply reports actual current production for the first ten days of January, i.e., that Gammon "is currently producing at an annualized production run rate of 400,000 gold equivalent ounces."  This statement is nothing more than a mathematical extrapolation from the current production figures which are included in the release.[4]  Midas does not allege ***any*** facts to suggest that these actual production numbers were false or inaccurate when reported.  *See Hillson*, 42 F.3d at 213.

Furthermore, Midas does not allege that it relied on Gammon's January "on schedule" statements, which were superseded by subsequent press releases and the Registration Statement that say Gammon "is targeting production" of 400,000 gold equivalent ounces.  Thus, the "on schedule" statements cannot provide a basis for a fraud claim.[5]

---

[4]    These production numbers annualize to a production rate of 401,828 gold equivalent ounces.

[5]    The gist of Midas' Second Amended Complaint is that, right up to the day of the secondary offering, Gammon claimed it was "on schedule" and that, only after the secondary offering

### b.    Midas Fails To Allege That Gammon's Post-January 2007 Statements Were False When Made

All of Gammon's post-January 2007 statements at issue say that Gammon was "targeting production" of 400,000 gold equivalent ounces in 2007.[6]  Statements relating to a company's objectives are statements of opinion about future events; they are not actionable statements of fact.  *See* 15 U.S.C. § 78u-5(i)(1)(B); 15 U.S.C. 77z-2(i)(1)(B); *Rombach*, 355 F.3d at 174 ("expressions of puffery and corporate optimism do not give rise to securities violations"); *accord Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 870 (5th Cir. 2003) (statement that defendant was "targeting" 60 projects was not actionable absent allegations that the projects were not viable).  In order to allege that Gammon's objective was false, Midas is required to allege specific facts tending to show that Gammon had a different objective than it told the public.  Midas makes no such factual allegations, and thus its federal claims (Counts I-III) fail for inadequate pleading.

### 2.    Midas Fails to Allege Facts Giving Rise to a Strong Inference of Scienter (Count I)

Under the PSLRA, Midas must support its Section 10(b) claims by alleging "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2); *Novak*, 216 F.3d at 307.  The Second Circuit permits plaintiffs to establish a strong inference of scienter by alleging facts to show that defendants had both motive and opportunity to commit fraud or by alleging facts constituting strong

---

was complete, did Gammon admit it was "off schedule."  In other words, Midas asks the Court to make an inference of falsity and scienter based on the timing of Gammon's statements. However, "an inference from timing alone is not sufficient, without additional supporting facts and circumstances, to withstand the strict requirements of Rule 9(b)." *Hillson*, 42 F.3d at 215.

[6]  Midas mischaracterizes several of the post-January 2007 statements as using the phrase "on schedule" when "is targeting" is actually used.  *Compare* SAC ¶¶ 36, 50, 55 *with* Rock Decl. Exs. 5 at 1, 12, 13.

circumstantial evidence of conscious behavior or recklessness.  *Novak*, 216 F.3d at 307 (citation omitted).  "To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, -- U.S. --, 127 S.Ct. 2499, 2510 (2007).  A complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.*

### a.    Midas Fails to Allege Motive and Opportunity

Midas claims that Gammon's alleged "misrepresentations concerning its 2007 production were made for the sole purpose of inducing reliance by investors in purchasing common shares in the April 2007 public offering."  SAC ¶ 52.  *See also* SAC ¶ 67 (alleged misrepresentations "were made to induce Midas and other reasonable investors to misjudge the value of common shares of Gammon").

Allegations that defendants acted to ensure the success of a company's secondary public offering are insufficient to establish motive because "[such] steps are part of the officers' and directors' financial responsibilities to the Company."  *Rombach*, 355 F.3d at 177 (citing with approval the district court's finding).  "Action taken to 'maintain the appearance of corporate profitability, or of the success of an investment…does not entail concrete benefits' sufficient to demonstrate motive."  *Id.* (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996)).  This type of generalized corporate motive is not the sort of concrete benefit that courts have recognized as sufficient for inferring scienter.  *See Kalnit v. Eichler*, 264 F.3d 131, 139-42 (2d Cir. 2001); *Salinger v. Projectavision, Inc.*, 934 F. Supp. 1402, 1414 (S.D.N.Y. 1996) ("It is not sufficient . . . to plead scienter by alleging an abstract desire to enable the company to continue to enjoy a high stock price and thereby ease the difficulties of raising additional capital.").

18

Plaintiffs must allege that there was a specific benefit that accrued to the Individual Defendants. *See In re Open Joint Stock Co. "Vimpel Comms." Secs. Litig.*, No. 04 Civ. 9742(NRB), 2006 WL 647981, at *7 (S.D.N.Y. March 14, 2006). The SAC contains no such allegations. Furthermore, Midas has failed to allege anything that would lead to an inference that each Individual Defendant had knowledge of contrary facts or otherwise intended to commit fraud. "[N]onspecific allegations that a defendant's knowledge of certain practices can be inferred from his or her high position in a company are not sufficient to satisfy the PSLRA's heightened pleading requirement with respect to *scienter*." *Davidoff v. Farina*, No. 04 Civ. 7617(NRB), 2005 WL 2030501, at *17 (S.D.N.Y. Aug. 22, 2005). Thus Midas fails to plead facts sufficient to show that Defendants had a "motive and opportunity" to commit fraud.

### b.    Midas Fails to Allege Strong Circumstantial Evidence of Conscious Behavior

Since Midas fails adequately to allege that Gammon's statements were false when made, neither can it show scienter by conscious misbehavior or recklessness. *See San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 813 (2d Cir. 1996); *Manufacturers Life*, 2000 WL 709006, at *3 ("The level of recklessness required [is] . . . an extreme departure from the standards of ordinary care." (quotation omitted)). Midas' sole basis for alleging scienter is its reference to *past* monthly production reports issued by Gammon. SAC ¶ 61. These allegations are insufficient to plead scienter under the PSLRA:

> [Plaintiff's] complaint does not include adequate corroborating details. [Plaintiff] does not mention, for instance, the sources of her information with respect to the reports, how she learned of the reports, who drafted them, or which officers received them. Nor does she include an adequate description of their contents which we believe – if they did exist – would include countless specifics regarding [production data and financial projections]. We would expect that a proper complaint which purports to rely on the existence of internal reports would contain at least some specifics

19

> from those reports as well as such facts as may indicate their
> reliability.

*In re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999); *accord Novak*, 216

F.3d at 309 (requiring plaintiff to specifically identify reports or statements that show defendants

had access to contrary facts).  Indeed, here, Midas fails to allege that contemporaneous reports

even existed at the time the statements were made.

Plaintiff asks the Court to infer from Gammon's final first quarter results that Gammon

must have known, during the first quarter, that an estimate of 400,000 gold equivalent ounces for

the year was not achievable.  Midas does not even allege that Gammon's plant lacked the

capacity to increase production in the last three quarters to meet the 400,000 ounce target.  Midas

does not come close to alleging facts that give rise to a strong inference of scienter.  To the

contrary, its pleading allows for a number of "nonculpable explanations" for Gammon's

statements, including that Gammon encountered unexpected equipment problems, or that it

believed it could ramp up production in the remaining quarters to meet its forward-looking

"target."  *See Tellabs*, 127 S.Ct. at 2510.  Because Midas fails to allege specific facts showing a

strong inference of scienter, its 10b-5 claims must be dismissed.

### D.    Midas Fails To Plead Loss Causation (Count I-III)

Loss causation "is the causal link between the alleged misconduct and the economic harm

ultimately suffered by the plaintiff."  *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172-173

(2d Cir. 2005) (quoting *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d

189, 197 (2d Cir. 2003)).  It is analogous, but not identical, to the tort law concept of "proximate

case."  *Id.* at 172-173  A securities fraud plaintiff must adequately plead loss causation to survive

a motion to dismiss.  *Id.*

### 1. Midas' Losses Were Caused by Materialization of a Disclosed Risk, Not by Materialization of a Concealed Risk

According to Midas, Gammon's alleged misstatements caused Midas to pay "an inflated price for its share of Gammon" and that, after Gammon released its first quarter report on May 10, 2007, "the price of Gammon stock fell dramatically." SAC ¶¶ 79, 65. These allegations are insufficient to plead loss causation as a matter of law.

"It is not enough to allege that a defendant's misrepresentations and omissions induced a 'purchase-time value disparity' between the price paid for a security and its 'true 'investment quality.''" *Lentell*, 396 F.3d at 174 (quotation omitted). A plaintiff must allege "that the loss be foreseeable and that the loss be caused by the materialization of the concealed risk." *Id.* at 173. Because Midas has failed to allege facts showing loss causation, its Counts I-III fail must be dismissed.

### 2. Midas Failed to Sell Its Stock or Tender It Back (Count III)

A plaintiff asserting a Section 12(a)(2) claim under the Exchange Act is entitled to either damages or rescission. 15 U.S.C. § 77l(a)(2). "If the plaintiff still owns the security, he is entitled to rescission, but not damages; if he no longer owns the security, damages, not rescission, are the appropriate remedy." *In re AOL Time Warner Sec. and "ERISA" Litig.*, 381 F. Supp. 2d 192, 246-47 (S.D.N.Y. 2004). When a plaintiff fails to plead that it sold stock at issue in a Section 12(a)(2) claim, the plaintiff's only possible remedy is rescission and the plaintiff must demand rescission by tendering his stock. *Id.* at 247; 15 U.S.C. § 77l(a). "An investor cannot be allowed to delay a demand for rescission while he 'watch[es] the market go up or down, thereby speculating on the success or value at the total risk of the wrongdoer.'" *In re AOL*, 381 F. Supp. 2d at 247 (quotation omitted). Therefore, "[a] complaint that does not plead at least an offer of tender is insufficient and subject to dismissal." *Morin v. Trupin*, 747

F.Supp 1051, 1063 (S.D.N.Y. 1993).  Thus, Midas' § 12(a)(2) claim (Count III) must be dismissed for this additional reason.

### E.    Because Midas Fails To Allege a Predicate Securities Violation, Midas' Control Person Claims Also Fail (Count IV)

To state a prima facie control person claim, "a plaintiff must show (1) a primary violation by a controlled person, (2) control of the primary violator by the defendant; and (3) 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation."  *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996).  Since Midas has failed to plead adequate Section 10(b) Exchange Act claim or Section 11 or 12 Securities Act claims, Plaintiff has failed to plead viable control person claims under either Act.  Count IV therefore fails.

## II.    MIDAS' STATE LAW CLAIMS SHOULD BE DISMISSED (COUNTS V-VIII)

Midas' New York state law claims for common law fraud, negligence, violations of New York's Deceptive Acts and Practices statutes §§ 349 and 350 ("NYDAP"), and unjust enrichment are merely afterthoughts, unsupported by any specific factual allegations, and should also be dismissed.  Indeed, the SAC provides little more than conclusory allegations and a formulaic recitation of the elements of these causes of action.  That is not enough.  *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007).

### A.    Midas Fails to Plead Its Common Law Fraud Claim with Sufficient Particularity (Count VI)

The requirements for pleading and proving common law fraud under Rule 9(b) and New York law are the same as those for pleading and proving a Rule 10b-5 claim.  *See e.g., In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677(NRB), 2007 WL 1946553, at *7 n.5 (S.D.N.Y. June 28, 2007) (noting that the heightened pleading standard for claims under Rule 9(b) is in conformity with the Supreme Court's direction in *Tellabs* and *Twombly*); *Manufacturers Life*,

2000 WL 709006, at *5 (dismissing common law fraud claim for "precisely the same reasons" as the federal claim).  Midas' common law fraud claim against all Defendants (Count VI) relies on the same deficient allegations as the federal claim and should therefore be dismissed.

**B.    Midas' Negligent Misrepresentation, NYDAP, and Unjust Enrichment Claims Are Preempted by the Martin Act (Counts V, VII, VIII)**

Midas' negligent misrepresentation, NYDAP, and unjust enrichment claims should all be dismissed because "causes of action related to a plaintiff's securities fraud claim that do not include scienter as an essential element are typically preempted by the Martin Act."  *In re Bayou Hedge Fund Litig.*, Nos. 06-MDL-1755 (CM), 06-CV-2943 (CM), 2007 WL 2319127, at *15 (S.D.N.Y. July 31, 2007) (quotation omitted); *see also Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 354-55 (S.D.N.Y. 2005).[7]

"[U]nder New York law, negligent misrepresentation claims made in connection with the purchase or sale of securities are preempted by the Martin Act, N.Y. Gen. Bus. Law §§ 352 et seq."  *In re Marsh & McLennan Cos., Inc. Secs. Litig.*, 501 F. Supp. 2d 452, 495 (S.D.N.Y. 2006); *Manufacturers Life*, 2000 WL 709006, at *5 (dismissing negligent misrepresentation claim as barred by the Martin Act).  Thus, Midas' negligence claim is preempted.

Scienter is not an element of a NYDAP claim or an unjust enrichment claim.  *See Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005) (noting that a plaintiff asserting a claim under New York's consumer protection laws need not demonstrate that the defendant acted intentionally or with scienter); *Whitman Realty Group, Inc. v. Galano*, 838 N.Y.S.2d 585, 587 (N.Y. App. Div. 2007) (listing elements of unjust enrichment, without scienter).

---

[7]    The Martin Act provides the New York Attorney General with the sole discretion to investigate state securities violations and does not allow for a private right of action.  *See* N.Y. Gen. Bus. Law § 352(1) (McKinney 2007); *Bayou Hedge Fund*, 2007 WL 2319127, at *14.

Midas' negligent misrepresentation, NYDAP, and unjust enrichment claims (Counts V, VII, and VIII) are clearly related to its securities fraud claims.  Because scienter is not an essential element of these claims, they are preempted by the Martin Act and should be dismissed.

### C.    The New York Deceptive Acts and Practices Statute Does Not Apply to Securities Claims (Count VIII)

Midas' NYDAP claim against Gammon should also be dismissed because New York's Deceptive Acts and Practices statutes §§ 349 and 350 do not apply to the purchase or sale of securities.  "The sale of securities . . . are considered to be investments rather than goods to be consumed or used [and do] not give rise to a consumer fraud claim under [§ 349]."  *Berger v. E*Trade Group, Inc.*, No. 600721/99, 2000 WL 360092, *4 (N.Y. Sup. Ct. Mar. 28, 2000) (internal alterations and quotation omitted); *see also In re Gas Reclamation, Inc. Secs. Litig.*, 733 F. Supp. 713, 725 (S.D.N.Y. 1990) ("the New York Consumer Protection From Deceptive Acts and Practices Statute, Gen.Bus.L. §§ 349 to 350-f (McKinney 1988 & Supp.1990), does not apply to the sale of securities").  Midas, like the plaintiff in *Berger*, "is not a consumer of goods, but an investor."  *Berger*, 2000 WL 360092, at *5.  Because Midas' NYDAP §§ 349 and 350 claims (Count VIII) relate to the sale of securities, they are not actionable.

## **CONCLUSION**

For all the reasons discussed herein, the Court should dismiss Midas' Second Amended Complaint with prejudice, award Gammon Gold costs and disbursements, and award Gammon Gold any other relief that the Court deems appropriate.

DATED: December 21, 2007                    DORSEY & WHITNEY LLP


/s/Brooke E. Pietrzak
Brooke E. Pietrzak (BP-7314)
250 Park Avenue
New York, NY 10177
(212) 415-9200

Thomas P. Swigert (admitted *pro hac vice*)
F. Matthew Ralph (*pro hac vice* pending)
John Rock (admitted *pro hac vice*)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

*Attorneys for Defendants Gammon Gold Inc.,
Fred George, Bradley Langille, Russell
Barwick, and Colin Sutherland (collectively, the
"Gammon Defendants")*