Brooke E. Pietrzak (BP-7314)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY 10177
(212) 415-9200

Thomas P. Swigert (admitted *pro hac vice*)
F. Matthew Ralph (*pro hac vice* pending)
John Rock (admitted *pro hac vice*)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

*Attorneys for Defendants Gammon Gold Inc.,*
*Fred George, Bradley Langille,*
*Russell Barwick, and Colin Sutherland*
*(collectively, the "Gammon Defendants")*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIDAS FUND, INC., <br><br> Plaintiff, <br><br> vs. <br><br> GAMMON GOLD INC., FRED GEORGE, BRADLEY LANGILLE, RUSSELL BARWICK, COLIN SUTHERLAND, BMO NESBITT BURNS INC., SCOTIA CAPITAL INC., and TD SECURITIES INC., <br><br> Defendants. | Index No. 07 CV 6707 (NRB) |

**REPLY MEMORANDUM IN SUPPORT OF**
**GAMMON GOLD INC.'S AND THE INDIVIDUAL DEFENDANTS'**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................. 1

I.   MIDAS FAILS TO STATE FEDERAL CLAIMS (COUNTS I-IV) ................................ 1

     A.   The Statements at Issue Are All Protected by the PSLRA Safe Harbor and the
          "Bespeaks Caution" Doctrine (Counts I-III) ............................................................ 1

          1.   The Statements At Issue Were Forward-Looking Statements .................... 1

          2.   Gammon Identified the Very Risks That Caused Plaintiff's Losses .......... 3

     B.   Midas Fails to Meet Pleading Standards (Counts I-III) ......................................... 5

          1.   Midas Fails to Plead Motive and Opportunity ........................................... 5

          2.   Midas Fails to Allege Strong Evidence of Scienter ................................... 6

          3.   Gammon's State of Mind Is Irrelevant ....................................................... 8

     C.   Midas Sold Its Stock After Commencing This Action (Count III) ......................... 9

II.  MIDAS FAILS TO PLEAD VIABLE STATE LAW CLAIMS (COUNTS V-VIII) ........ 9

     A.   Plaintiff Fails to Plead Common Law Fraud With Particularity (Count VI) .......... 9

     B.   Plaintiff's Common Law Claims Are Preempted by the Martin Act ...................... 9

     C.   NYDAP Does Not Cover Securities (Count VIII) ............................................... 10

III. MIDAS SHOULD NOT BE ALLOWED TO REPLEAD ............................................... 10

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995) ...................................................................................................6

*Castellano v. Young & Rubicam, Inc.*,
    257 F.3d 171 (2d Cir. 2001)................................................................................................10

*Cromer Fin. Ltd. v. Berger*,
    2001 WL 1112548 (S.D.N.Y. 2001).....................................................................................9

*Dover, Ltd. v. A.B. Watley, Inc.*,
    423 F.Supp.2d 303 (S.D.N.Y. 2006)...................................................................................10

*Ehlert v. Singer*,
    245 F.3d 1313 (11th Cir. 2001) ............................................................................................4

*Faulkner v. Verizon Communications, Inc.*,
    189 F.Supp.2d 161 (S.D.N.Y. 2002).....................................................................................6

*Gray v. Seaboard Sec., Inc.*,
    14 A.D.3d 852, 788 N.Y.S.2d 471 (N.Y. App. Div. 2005) .......................................................10

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999)................................................................................................8

*Harris v. Ivax Corp.*,
    182 F.3d 799 (11th Cir. 1999) .........................................................................................3, 8

*Hillson Partners Ltd. P'ship v. Adage, Inc.*,
    42 F.3d 204 (4th Cir. 1994) .................................................................................................1

*In re Adelphia Communications Corp.*,
    398 F.Supp.2d 244 (S.D.N.Y. 2005).....................................................................................7

*In re AOL Time Warner Sec. and "ERISA" Litig.*,
    381 F.Supp.2d 192 (S.D.N.Y. 2004).....................................................................................9

*In re ATI Tech. Inc. Sec. Litig.*,
    216 F.Supp.2d 418 (E.D.Pa. 2002).......................................................................................8

*In re Broadcom Corp. Sec. Litig.*,
    2004 WL 3390052 (C.D. Cal. 2004).....................................................................................8

*In re Cryolife, Inc. Sec. Litig.*,
    2003 WL 24015055 (N.D. Ga. 2003) ...............................................................................8

*In re Duane Reade Inc. Sec. Litig.*,
    2003 WL 22801416 (S.D.N.Y. 2003) ...............................................................................6

*In re Gilat Satellite Networks, Ltd.*,
    2005 WL 2277476 (E.D.N.Y. 2005) .................................................................................8

*In re Ibis Technology Sec. Litig.*,
    422 F.Supp.2d 294 (D. Mass. 2006) ..................................................................................8

*In re Keyspan Corp.*,
    2003 WL 21981806 (E.D.N.Y. 2003) ...............................................................................7

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    273 F.Supp.2d 351 (S.D.N.Y. 2003) .................................................................................3

*In re Midway Games, Inc. Sec. Litig.*,
    332 F.Supp.2d 1152 (N.D. Ill. 2004) .................................................................................8

*In re Portal Software Inc. Sec. Litig.*,
    2006 WL 2385250 (N.D. Cal. 2006) .................................................................................8

*In re SeeBeyond Technologies Corp. Sec. Litig.*,
    266 F.Supp.2d 1150 (C.D. Cal. 2003) ...............................................................................8

*In re Silicon Graphics Inc. Secs. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ..............................................................................................6

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    160 F.Supp.2d 1059 (N.D.Cal. 2001) ................................................................................8

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ................................................................................... 7-8

*In re XM Satellite Radio Holdings Sec, Litig.*,
    470 F.Supp.2d 165 ( D.D.C. 2007) ....................................................................................8

*In re Winn-Dixie Stores, Inc. Sec. Litig.*,
    2007 WL 4287545 (M.D. Fla. 2007) .................................................................................8

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ...............................................................................................6

*Kurtzman v. Compaq Computer Corp.*,
    2000 WL 34292632 (S.D. Tex. 2000) ...............................................................................8


*Miller v. Champion Enterprises, Inc.*,
    346 F.3d 660 (6th Cir. 2003) ..................................................................................................8

*Nanopierce Technologies, Inc. v. Southridge Capital Mgmt LLC*,
    2003 WL 22052894 (S.D.N.Y. 2003)..................................................................................10

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).................................................................................................6

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)............................................................................................ 5-6

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)...................................................................................................5

*Sandmire v. Alliant Energy Corp.*,
    296 F.Supp.2d 950 (W.D. Wis. 2003) ..................................................................................8

*Scalp & Blade, Inc. v. Advest, Inc.*,
    281 A.D.2d 882, 722 N.Y.S.2d 639 (N.Y. App. Div. 2001). .............................................9, 10

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir. 2004) ................................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    -- U.S. --, 127 S.Ct. 2499 (2007) .........................................................................................7

*Wigand v. Flo-Tek, Inc.*,
    609 F.2d 1028 (2d Cir. 1980)...............................................................................................9

**STATUTES**

15 U.S.C. § 77z-2..................................................................................................................4, 5

15 U.S.C. § 78u-5 .......................................................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9.........................................................................................................................8

H.R. Conf. Rep. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730, 743 ............................................4

**ARGUMENT**

The Court gave Midas "one last time" to allege viable securities fraud claims, but Midas fails to do so. The Court should dismiss this action with prejudice, in its entirety.

**I.    MIDAS FAILS TO STATE FEDERAL CLAIMS (COUNTS I-IV)**

   **A.    The Statements at Issue Are All Protected by the PSLRA Safe Harbor and the "Bespeaks Caution" Doctrine (Counts I-III)**

   **1.    The Statements At Issue Were Forward-Looking Statements**

Midas tries to drag Gammon's forward-looking statements out of the PSLRA safe harbor and "bespeaks caution" doctrine by arguing that they are not really forward-looking statements.[1] According to Midas, "the entirety of Gammon's false statements either directly describe Gammon's current production rate or provide a definitive projection of the its [sic] annualized output that is based upon current production rates." Pl. Mem. at 10. This is simply not true. On January 11, 2007, Gammon issued a press release announcing that its Mexican mines were "currently producing at an annualized production run rate of 400,000 gold equivalent ounces" based on the first 10 days of January.[2] Rock Decl. Ex. 1 at 1. That was the last time during the relevant period that Gammon made any representation about its "current" production or its "annualized run rate." Gammon's press releases of January 16, January 22, and January 29 related primarily to exploratory drilling. Gammon's February 2007 presentation at the BMO Capital Markets Conference summarized Gammon's financial condition and prospects. Gammon's March 28 and April 2 releases announced 2006 annual financial results. Gammon's April 3 release announced a new CEO. Gammon's April 9 release announced the secondary

---

[1]   Significantly, Midas does not address the cases Gammon cites on page 10 of its Memorandum where other courts have found statements like "on schedule" and "on target" to be forward-looking statements. *See especially Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 212-13 (4th Cir. 1994).

[2]   As Gammon previously pointed out, and as Midas implicitly concedes, the January 11 release was factually accurate. *See* Gammon Memo. at 16.

1

offering at issue.  Gammon's April 24 release announced completion of the offering.  Gammon's May 1 release announced a new CFO.  Not until May 10, when Gammon released its first quarter financial results, did Gammon next provide production results.  Rock Decl. Exs. 2-10, 12-14.

It is true that Gammon's post-January 11 statements on January 16,  22, and 29 statements reported it was "on schedule" to produce 400,000 gold equivalent ounces and that the March 28, April 2, April 3, April 24, and May 1 press releases reported Gammon was "targeting" production of 400,000 gold equivalent ounces, but Midas' argument that Gammon was thereby implicitly announcing its current production or annualized run rate is baseless.

First, Midas cannot point to any language about Gammon's "current production" or "annualized run rate" in its post-January 11 statements at issue here.

Second, "on schedule" or "targeting" do not, as Midas argues, implicitly contain representations about current production or annualized run rates.  Pl. Mem. at 10-12.  No rule of law or economics requires any company to maintain a constant rate of production.  In a variety of scenarios, a company could be "on schedule" to meet a production goal without having a constant production rate that is mathematically consistent with the goal.  As production can be highly variable, whether due to inconsistent ore grades, labor issues, seasonality, etc., a mining company may reasonably expect to catch up later on earlier production shortfalls.  Particularly at the start of a production cycle, a mining company may also reasonably expect to introduce equipment or procedures that will increase productivity later.

Third, Midas had no reason to believe that any of Gammon's post-January 11 statements concerned Gammon's production rates because Gammon expressly advised the public on January 11 that it "***will now provide production updates*** in the Company's ***quarterly*** Financial Statements and Management Discussion and Analysis."  Rock Decl. Ex. 1 at 2 (emphasis added).

2

Gammon thus informed the public, at the outset of the period at issue, that it would not provide another "production update" until it issued first quarter actual results some time after March 31, 2007. Indeed, none of Gammon's subsequent public statements, until its May 10, 2007 announcement of its first quarter actual results, purported to inform the public about Gammon's "current" production or "annualized run rate."

Fourth, Gammon guarded against the risk that an investor might misinterpret its forward-looking statements about "schedule" and "targeting" by accompanying each with express cautionary language that "[a]ll statements other than statements of historical fact, included in this release…are forward-looking statements that involve various risks and uncertainties."[3] *E.g.*, Rock Decl. Ex. 4 at 4. Indeed, although Gammon's post-January 11, 2007 press releases contained none, Gammon nevertheless cautioned that any statements which could be construed as statements "regarding the annualized production run rate at the Ocampo and El Cubo mines" were intended only as forward-looking statements. *Id.*

Fifth, "'mixed statements' consisting of forward-looking and non-forward looking factors are nonetheless treated by courts as forward-looking" as a matter of law. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 273 F.Supp.2d 351, 376 (S.D.N.Y. 2003) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 806-07 (11th Cir. 1999)). Therefore, even if Midas were correct, the statements at issue were still forward-looking.

### 2. Gammon Identified the Very Risks That Caused Plaintiff's Losses

While Plaintiff faults Gammon for "boilerplate" warnings that failed "to warn of the specific risks that actually materialized," Pl. Memo. at 13, 16, the statements at issue clearly disprove this assertion. The PSLRA safe harbor requires only that an issuer identify "important

---

[3] Gammon, in each instance, went on to identify specific risks and uncertainties that encompassed the very developments which ultimately impaired Gammon's 2007 production.

3

factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 77z-2(c). "Failure to include the particular factor that ultimately causes the forward-looking statement not to come true will not mean that the statement is not protected by the safe harbor." H.R. Conf. Rep. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730, 743; *Ehlert v. Singer*, 245 F.3d 1313, 1320 (11th Cir. 2001).

As it turned out, Gammon's first quarter production experienced "unexpected equipment problems," SAC ¶ 68, and "repairs to the crushing facility" and weather-related "delays of critical consumables to the site." Rock Decl. Ex. 16, at 2. Gammon disclosed the very risks that ultimately materialized. Gammon cautioned that its forward-looking statements were subject to the risks of "failure of plant, equipment or process to operate as anticipated" and "accidents," Rock Decl. Ex. 11, at 3, and "equipment failures; industrial accidents; [or] natural phenomena such as inclement weather conditions." *Id.* Ex. 18 at 41.

Plaintiffs argue, in particular, that Gammon's February 26, 2007 presentation to investors at the annual BMO Capital Markets conference breached the PSLRA rules for oral forward-looking statements because it failed to recite specific language "that the actual results could differ materially from those projected in the forward-looking statement" or to "refer the listener to a readily-available written document which contains the appropriate cautionary language." Pl. Memo. at 14 (quoting 15 U.S.C. §§ 77z-2(c)(2)(B), 78u-5(c)(2)(B)). Plaintiff omits to mention that Fred George, Gammon's President and Chairman, preceded his statement on Gammon's production targets as follows: "This is a forward-looking statement. I'm sure you've seen enough of them. Today, you probably got them memorized." Rock Decl. Ex. 5 at 1. The oral presentation was accompanied by written materials containing a page of cautionary language entitled "Forward Looking Information." Rock Decl. Ex. 6 at 1. The written cautions not only

4

identified forward-looking statements in the presentation and listed the various risk factors discussed above, it also repeated, four times, that "actual results and future events could differ materially" from the forward-looking statements. *Id.*

Plaintiff suggests that Gammon should have updated its forward-looking statements. Pl. Memo. at 10. Gammon repeatedly stated that it "does not undertake to update any forward-looking statements that are included herein, except in accordance with applicable securities laws." *E.g.*, Rock Decl. Ex. 1 at 2. Under the PSLRA, Gammon had no legal duty to update its forward-looking statements. 15 U.S.C. § 77z-2(d).

### B. Midas Fails to Meet Pleading Standards (Counts I-III)

#### 1. Midas Fails to Plead Motive and Opportunity

Midas argues it can establish "motive and opportunity" simply by identifying a specific corporate transaction that could have been accomplished through the alleged fraud, in this case, Gammon's April 2007 secondary public offering. The cases Midas cites, however, do not support its argument. Pl. Memo. at 20. *Rothman* observed that, "***in some circumstances***, the artificial inflation of stock price ***in the acquisition context*** may be sufficient for securities fraud scienter." *Rothman v. Gregor*, 220 F.3d 81, 93 (2d Cir. 2000) (emphasis added). *Rothman* involved a corporate acquisition, and the other two cases Plaintiff cites (*Van der Moolen* and *Time Warner*) also fall into this category. *See* Pl. Memo. at 20.

Here, however, the corporate transaction at issue was simply a secondary public offering. Similar to Gammon's situation, *Rombach* likewise involved a "secondary public offering worth nearly $100 million" and is directly on point:

> [P]laintiffs nowhere allege that defendants engaged in these transactions to secure personal gain. Instead, the district court found that "these steps are part of the officers' and directors' financial responsibilities to the Company. Action taken to "maintain the appearance of corporate profitability, or of the

5

>success of an investment…does not entail concrete benefits" sufficient to demonstrate motive.

*Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004). (citations omitted). Under *Rombach*, Midas fails to plead motive.

### 2. Midas Fails to Allege Strong Evidence of Scienter

When "motive is not apparent…the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (citation omitted). Conclusory allegations are not enough, *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995), nor is "mere speculation." *Faulkner v. Verizon Communications, Inc.*, 189 F.Supp.2d 161, 179 (S.D.N.Y. 2002). Midas argues that Gammon must have known, at some point during the first quarter, that its 2007 production targets could not be met. Pl. Mem. at 15. This argument is pure speculation, and virtually identical to the argument rejected in *In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416 (S.D.N.Y. 2003). The *Duane Reade* plaintiffs had alleged that "because sales were down at the end of the first quarter, the impending final results for the second quarter must have been apparent throughout the quarter (including after the first three weeks)," but this Court concluded that such allegations were nothing more than fraud-by-hindsight. *Id.* at *10.

The sole support that Midas alleges for its theory that Gammon suppressed material information is that Gammon stopped providing monthly production reports in January 2007. SAC ¶ 61. Midas does not allege what information the discontinued reports would have contained, who would have received them, or how the reports would have belied Gammon's public statements. *Cf. In re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999); *accord Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (requiring plaintiff to specifically identify reports or statements that show defendants had access to contrary facts). Significantly,

6

even with the benefit of hindsight, Midas cannot identify any specific event by which, or date on which, Gammon supposedly realized that the forward-looking statement was false and misleading.

Midas theorizes that Gammon stopped using monthly reports in order "to hide the true production figures from the public." Pl. Memo. at 18.  But this is sheer speculation and undercut by the fact that Gammon publicly announced on January 11, *before* the relevant period, that it would issue quarterly reports going forward.  The theoretical wrong-doer trying to hide something would presumably (1) stop making public announcements after a perceived need to hide information, not before, and (2) refuse to commit to future disclosures.  Gammon's switch from monthly production reports to quarterly production reports was more likely to be motivated by legitimate business reasons than by any intent to defraud the public.  Therefore, since equally "plausible nonculpable explanations" for Gammon's conduct can be drawn from the same fact, the change cannot support any inference of fraud or scienter.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, -- U.S. --, 127 S.Ct. 2499, 2510 (2007).

None of the cases Midas cites approves fraud allegations as sparse as Midas'.  Plaintiffs in *Adelphia* alleged, among other things, that defendant's operations personnel had notified corporate accounting that public statements were grossly inaccurate but were told not to speak about the issue to anyone.  *In re Adelphia Communications Corp.*, 398 F.Supp.2d 244, 252 (S.D.N.Y. 2005).  Plaintiffs in *Keyspan* identified a specific meeting at which officers of defendant learned a laundry list of specific facts that belied public statements they subsequently made.  *In re Keyspan Corp.*, 2003 WL 21981806 at *12 (E.D.N.Y. 2003).  The *Veeco* decision, which Midas cites several times, identifies 13 paragraphs in plaintiffs' complaint containing details why certain statements were allegedly fraudulent.  *In re Veeco Instruments, Inc. Sec.*

7

*Litig.*, 235 F.R.D. 220, 228 (S.D.N.Y. 2006).  Here, Midas alleges only that Gammon switched from monthly to quarterly production reports during the relevant period.

### 3. Gammon's State of Mind Is Irrelevant

Even if Midas had pleaded scienter with sufficient particularity under the PSLRA and Fed. R. Civ. P. 9, which it has not, it would not avoid dismissal.  Where, as here, forward-looking statements are accompanied by meaningful cautionary language, "the defendants' state of mind is irrelevant."  *Harris v. Ivax Corp.*, 182 F.3d 799, 803 (11th Cir. 1999).

If a "forward-looking statement is accompanied by cautionary language sufficiently meaningful as to render it incapable of being reasonably relied upon, it is immaterial as a matter of law and the court need not consider the defendants' state of mind."  *In re Gilat Satellite Networks, Ltd.*, 2005 WL 2277476 at *12 (E.D.N.Y. 2005). [4]  This rule "reflects the recognition that the social costs, in the aggregate and over the long haul, of a rule that always allows plaintiffs discovery on the question of the state of mind of defendants in every case are just too high."  *Id.* (citations omitted).  Thus, Midas could not avoid dismissal even if it had pled sufficient facts under the PSLRA and Fed. R. Civ. P. 9.

---

[4]   *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 371 (5th Cir. 2004); *Miller v. Champion Enterprises, Inc.*, 346 F.3d 660, 672 (6th Cir. 2003); *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 201 (1st Cir. 1999); *Harris*, 182 F.3d at 803; *In re XM Satellite Radio Holdings Sec. Litig.*, 479 F.Supp.2d 165, 186 n. 14 (D.D.C. 2007); *In re Ibis Technology Sec. Litig.*, 422 F.Supp.2d 294, 310 (D. Mass. 2006); *In re Midway Games, Inc. Sec. Litig.*, 332 F.Supp.2d 1152, 1168 (N.D. Ill. 2004); *Sandmire v. Alliant Energy Corp.*, 296 F.Supp.2d 950, 958 (W.D. Wis. 2003); *In re SeeBeyond Technologies Corp. Sec. Litig.*, 266 F.Supp.2d 1150, 1163-66 (C.D. Cal. 2003); *In re ATI Tech. Inc. Sec. Litig.*, 216 F.Supp.2d 418, 429 (E.D.Pa. 2002); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F.Supp.2d 1059, 1068 n.4 (N.D.Cal. 2001); *In re Winn-Dixie Stores, Inc. Sec. Litig.*, 2007 WL 4287545 at *9 (M.D. Fla. 2007); *In re Portal Software Inc. Sec. Litig.*, 2006 WL 2385250 at *12 (N.D. Cal. 2006); *In re Broadcom Corp. Sec. Litig.*, 2004 WL 3390052 at *3 (C.D. Cal. 2004); *In re Cryolife, Inc. Sec. Litig.*, 2003 WL 24015055 at *13 (N.D. Ga. 2003); *Kurtzman v. Compaq Computer Corp.*, 2000 WL 34292632 at *6 (S.D. Tex. 2000).

### C. Midas Sold Its Stock After Commencing This Action (Count III)

"The proper time to make the choice between the two types of relief afforded by section 12(2) is at the time the [original] complaint is filed." *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1035 (2d Cir. 1980). A plaintiff cannot be allowed to delay the election of remedies "while he 'watch[es] the market go up or down, thereby speculating on the success or value at the total risk of the wrongdoer.'" *In re AOL Time Warner Sec. and "ERISA" Litig.*, 381 F.Supp.2d 192, 246-47 (S.D.N.Y. 2004) (citation omitted).

Midas argues that it timely elected its Section 12 remedy because it "disposed of the Gammon shares it purchased in April 2007 shortly before it filed the Complaint." Midas omits to mention that it sold before filing its Second Amended Complaint, not, as is required, before it commenced this action. Midas filed its original complaint on July 25, 2007 and its first amended complaint on August 6, 2007 without selling its Gammon shares or tendering them back. Midas ultimately liquidated its Gammon shares on October 12, 2007, the same day it filed its Second Amended Complaint. Kaplan Decl. Ex. C. Midas improperly watched the market for months before electing its Section 12 remedy. *AOL Time Warner*, 381 F.Supp.2d at 247.

## II. MIDAS FAILS TO PLEAD VIABLE STATE LAW CLAIMS (COUNTS V-VIII)

### A. Plaintiff Fails to Plead Common Law Fraud With Particularity (Count VI)

Midas fails to plead common law fraud with sufficient particularity for the same reasons that it fails to allege viable federal securities fraud claims.

### B. Plaintiff's Common Law Claims Are Preempted by the Martin Act

Midas argues that the Martin Act does not preempt its common law claims, citing *Cromer Fin. Ltd. v. Berger*, 2001 WL 1112548, at *3-4 (S.D.N.Y. 2001) and *Scalp & Blade, Inc. v. Advest, Inc.*, 281 A.D.2d 882, 722 N.Y.S.2d 639, 640 (N.Y. App. Div. 2001). Pl. Memo. at 24. As the federal courts have repeatedly stated, however, *Cromer* and *Scalp & Blade* "stand as

9

solitary islands in a stream of contrary opinion." *Dover, Ltd. v. A.B. Watley, Inc.*, 423 F.Supp.2d 303, 330 (S.D.N.Y. 2006) (quoting *Nanopierce Technologies, Inc. v. Southridge Capital Mgmt LLC*, 2003 WL 22052894 at *4 (S.D.N.Y. 2003)). The majority of courts have concluded that sustaining common law claims for securities fraud "would effectively permit a private action under the Martin Act, which would be inconsistent with the Attorney-General's exclusive enforcement powers thereunder." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001); *see also Nanopierce*, 2003 WL 22052894 at *2 (citing N.Y. cases).

   **C.** **NYDAP Does Not Cover Securities (Count VIII)**

Midas argues that its NYDAP claims are not subject to dismissal under *Scalp & Blade*. "The vast majority of courts which have considered the issue have found [NYDAP] inapplicable to securities transactions." *Gray v. Seaboard Sec., Inc.*, 14 A.D.3d 852, 788 N.Y.S.2d 471, 472 (N.Y. App. Div. 2005) (citations omitted). The only case *Gray* identifies as contrary to this weight of authority is the case cited by Midas, *Scalp & Blade*. *Id.*

**III. MIDAS SHOULD NOT BE ALLOWED TO REPLEAD**

Midas has had three chances to plead viable claims. The Court warned that this would be Midas' last chance because Midas was allowed to replead with knowledge of Gammon's objections to the First Amended Complaint. Midas should not be allowed to replead yet again.

### CONCLUSION

For all the reasons discussed herein, the Court should dismiss Midas' Second Amended Complaint with prejudice, award Gammon costs and disbursements, and award Gammon any other relief that the Court deems appropriate.

| | |
|---|---|
| DATED: February 15, 2008 | DORSEY & WHITNEY LLP |
| | |
| | /s/Brooke E. Pietrzak |
| | Brooke E. Pietrzak (BP-7314) |
| | 250 Park Avenue |
| | New York, NY 10177 |
| | (212) 415-9200 |
| | |
| | Thomas P. Swigert (admitted *pro hac vice*) |
| | F. Matthew Ralph (*pro hac vice* pending) |
| | John Rock (admitted *pro hac vice*) |
| | 50 South Sixth Street, Suite 1500 |
| | Minneapolis, MN 55402 |
| | (612) 340-2600 |
| | |
| | *Attorneys for Defendants Gammon Gold Inc., Fred George, Bradley Langille, Russell Barwick, and Colin Sutherland (collectively, the "Gammon Defendants")* |